PALMER v. SOUTHERN EXPRESS CO.

(*Nashville.* December Term, 1913.)

1. **COMMERCE. Interstate commerce. State regulations. Validity.**
Acts 1913, 2d Extra Sess., ch. 1, sec. 5, forbidding any interstate carrier of intoxicating liquor to deliver liquor to the consignee unless the latter delivers a statement giving his name and address, and stating the use for which the liquor was ordered, directly interferes with interstate commerce as imposing a condition precedent, on the exercise by the carrier of the right to make delivery of an interstate shipment, and on the right of the consignee to receive delivery, and cannot be sustained as an exercise of the police power, or as authorized by the Wilson Act, which subjects liquor to State regulation, but which does not apply before actual delivery to the consignee. (*Post, pp.* 133-138.)

Acts cited and construed:  Acts 193, sec 5.

Constitution cited and construed:  Act 1, sec. 10.

Cases cited and approved:  State v. Kelly, 123 Tenn., 567-575; Louisville & Nashville Railroad Co. v. Brewing Co., 223 U. S., 82.

Cases cited and distinguished:  L. & N. R. R. Co. v. Brewing Co., supra; Leisy v. Hardin, 135 U. S., 100; Rhodes v. Iowa, 170 U. S., 412, 419; Welton v. Missouri, 91 U. S., 281; Minnesota Rate Cases, 230 U. S., 352.

2. **COMMERCE. Interstate commerce. State regulations. Validity.**
Acts 1913, 2d Extra Sess., ch. 1, sec. 9, subsec. 2, declaring that nothing in the act prohibiting the carrying into the State of intoxicating liquor shall make it unlawful for one to order, and have shipped and delivered to him from without the State, for his own use, intoxicating liquor in quantities not exceeding one gallon, operates as a regulation of interstate commerce so as to restrict deliveries  to one gallon at a time where liquors are intended for the personal use of the consignee, and is invalid. (*Post, pp.* 138-143.)

Palmer v. Express Co.

Cases cited and approved: Hennington v. Georgia, 163 U. S., 299; Lakeshore, etc., R. R. v. Ohio, etc., 173 U. S., 285; Gulf Colorado & S. F. R. Co. v. Hefley, 158 U. S., 98; Rhodes v. Iowa, 170 U. S., 425; People v. Hawkins, 157 N. Y., 1; Arnold v. Yanders, 56 Ohio St., 417; Adams Express Co. v. Kentucky, 206 U. S., 129.

Cases cited and distinguished: Minnesota Rate Cases, supra; Oklahoma v. Kansas Nat. Gas Co., 221 U. S., 255; Adams Express Co. v. Kentucky, 214 U. S., 219.

3. **COMMERCE.** Interstate commerce. Congressional regulations. Effect.

The Interstate Commerce Act (Act Feb. 4, 1887, ch. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), which applies to all corporations engaged in the transportation of property, and which declares that the term "transportation" shall include cars, facilities of shipment, etc., and the Wilson Act (Act Aug. 8, 1890, ch. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]), subjecting intoxicating liquors transported into the State to the State laws on arrival, and Crim. Code U. S. (Act March 4, 1909, ch. 321, 35 Stat. 1136 [U. S. Comp. St. Supp. 1911, pp. 1661, 1662]) secs. 238, 239, prohibiting a carrier from delivering liquor to any person except the consignee, and prohibiting carriers from collecting the price, or carrying C. O. D. shipments of liquor, etc., regulate interstate commerce in intoxicating liquors, and exclude all State action on the subject, and Acts 1913, 2d Extra Sess:, ch. 1, sec. 5, forbidding the delivery of an interstate shipment of liquor to any person other than the consignee, and section 8, applying to interstate shipments, and section 9, subsec. 5, prohibiting an interstate carrier from delivering intoxicating liquors, unless the consignee presents a statement setting forth enumerated facts, are void, because they conflict with the federal staututes on the subject. (*Post, pp.* 143-145.)

4. **COMMERCE.** Interstate commerce. Congressional regulations. Effect.

The Webb-Kenyon Act (Act March 1, 1913, ch. 90, 37 Stat. 699), prohibiting the transportation from one State into another of

liquor for sale in violation of any law of the State where received, does not apply to a liquor shipment for the personal use of the consignee and his family. (*Post, pp.* 146-148.)

5. **CONSTITUTIONAL LAW.** Validity of statutes. Right to raise questions.

A party having no interest in provisions of a statute cannot require the court to determine the constitutionality of such provision. (*Post, pp.* 148, 149.)

Cases cited and approved: Kelly v. State, 123 Tenn., 516; Richardson v. Young, 122 Tenn., 524.

6. **COMMERCE.** Interstate commerce. State regulations.

Acts 1913, 2d Extra Sess., ch. 1, sec. 3, requiring carriers of interstate shipments of liquor to file with the county court clerk of the county in which the liquor is delivered a statement giving the name and address of the consignee, the place of delivery, the kind and amount of liquor delivered, though imposing a new duty on interstate carriers of liquor, does not impose a direct burden on interstate commerce, and is not in conflict with the interstate commerce clause of the federal constitution, or with the federal statute making it unlawful for any carrier to disclose any information which may be used to the prejudice of a shipper or consignee, but not preventing the giving of such information to any officer of any State in the exercise of his powers. (*Post,* pp. 149-154.)

Cases cited and approved: Hennington v. Georgia, supra; Lakeshore, etc., R. R. v. Ohio, etc., supra; Gulf Colorado & S. F. Co. v. Hefley, supra.

7. **STATUTES.** Title. Constitutional provisions. Construction.

The purpose of Const. art. 2, sec. 17, providing that no bill shall embrace more than one subject, which shall be expressed in the title is to prevent omnibus legislation; but particulars leading directly or indirectly to the furtherance of the purpose appearing in the title may be embodied in the body of the act. (*Post, pp.* 154-156.)

Constitution cited and construed: Art. 2, sec. 17.

Palmer v. Express Co.

8. **CONSTITUTIONAL LAW. Statutes. Validity.**

Where one construction of a statute will make it void, and another will render it valid, the latter will be adopted, though the former at first view is the more natural interpretation of the words used. (*Post, p. 156.*)

Case cited and distinguished: Hardaway v. Lilly, supra.

9. **STATUTES. Title. Constitutional provisions.**

Though the title of an act is double, in violation of Const. art. 2, sec. 17, the act will be upheld where only one of the subjects is embraced in its body.

Case cited and approved: Knoxville v. Gass, 119 Tenn., 438.

10. **STATUTES. Title. Constitutional provisions.**

Acts 1913, 2d Extra Sess., ch. 1, prohibiting the transportation into the State of intoxicating liquor except in the manner prescribed, is but a regulation, and not a prohibition, of transportation of intoxicating liquors, and is not broader than the title entitled "An act regulating the shipment and delivery of intoxicating liquor," etc. (*Post, p. 157.*)

11. **STATUTES. Title. Constitutional provisions.**

Acts 1913, 2d Extra Sess., ch. 1, prohibiting the transportation into the State of intoxicating liquor except in the manner provided, and requiring an interstate carrier to file with the county court clerk of the county in which the liquor is delivered a statement giving the name and address of the consignee, place of delivery, and the kind and amount delivered, and declaring that a certified copy of the statement shall be "competent evidence in any of the courts of this State upon the trial of any cause whatsoever in which the same may be material," does not embrace more than one subject, since the provision as to the competency of a certified copy of a statement applies only to a cause arising under the act. (*Post, pp. 157-162.*)

Cases cited and approved: Manufacturing Co. v. Falls, 90 Tenn., 469; State, ex rel., v. Schlitz Brewing Co., 104 Tenn., 715;

Palmer v. Express Co.

Railroad v. Byrne, 119 Tenn., 278; Darnell v. State, 123 Tenn., 663; Kirk v. State, 126 Tenn., 7.

Case cited and distinguished: Samuelson v. State, 116 Tenn., 470.

## FROM DAVIDSON.

Appeal from Chancery Court, Davidson County— JOHN ALLISON, Chancellor.

VERTREES & VERTREES, for appellant.

FRANK · M. THOMPSON, attorney general, and CHARLES C. TRABUE, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill in the present case was filed to test the constitutionality of chapter 1 passed by the general assembly at its second extra session, on October 16, 1913. The act is as follows:

"An act regulating the shipment of intoxicating liquor into this State or between points within this State; regulating the delivery of such liquor; providing for the filing of statements with the county clerk showing such shipments, and providing that certified copies of each statement may be used as evidence, and for the fees to such county clerk for making such· copies; prescribing penalties for violation of

Palmer v. Express Co.

the provisions of this act; and conferring jurisdiction for the trial of violations of this act upon the courts of the county from or to which such shipments may be made, and regulating the procedure in relation thereto.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that it shall be unlawful for any person, firm, or corporation to ship, carry, transport, or convey any intoxicating liquor into this State, or from one point to another within this State, for the purpose of delivery, or to deliver the same to any person, firm, company, or corporation within the State, except as hereinafter provided.

"Sec. 2. Be it further enacted, that the term 'intoxicating liquors' used in the first section hereof shall be deemed to cover and include, and shall cover and include, all liquors—spirituous, vinous, or malt—containing more than one-half of one per cent. alcohol, and which are used, or intended to be used, as a beverage.

"Sec. 3. Be it further enacted, that it shall be the duty of any railroad company, express company, or any other common carrier or person, who shall carry any intoxicating liquors into this State, or from one point to another within this State, for the purpose of delivery, and who shall deliver such intoxicating liquors to any person, company, or corporation, to keep a record of such liquor and file with the county clerk of the county in which such liquor is delivered a statement in writing, setting forth the date on which such liquor was received and delivered, the name and post

office address of the consignor and consignee, the place
of delivery and to whom delivered, and the kind and
amount of intoxicating liquor delivered, such state-
ments to be filed within three days after the date of
the delivery of such liquor.

"Sec. 4. Be it further enacted, that it shall be the
duty of the county clerk to immediately file such state-
ment as a part of the files of his office, and permit any
and all persons so desiring to inspect the same at any
time his office may be open; and it shall be the further
duty of the county court clerk to give a certified copy
of such statement to any person requesting or demand-
ing the same upon the payment of the legal fees there-
for, and said certified copy shall be competent evidence
in any of the courts of this state upon the trial of any
cause whatsoever in which the same may be material.

"Sec. 5. Be it further enacted, that it shall be un-
lawful for any railroad company, express company,
corporation, or other common carrier, or the agent of
any railroad company, express company, corporation,
or other common carrier, to deliver any intoxicating
liquor to any person other than the consignee; and in
no case where there are reasonable grounds for believ-
ing that any consignment or package contains intoxi-
cating liquors shall any railroad company, express com-
pany, corporation, or other common carrier, or the
agent of such railroad company, express company, cor-
poration or common carrier, or person, deliver such
consignment or package without first having such con-
signee sign and deliver to the person in whose charge

such consignment or package may be for delivery, a written statement in substance as follows:

" 'I hereby state that my name is——; that my post office address is——, Tenn.; that I am more than twenty-one years of age; that I am the consignee to whom a packing containing——of intoxicating liquors was consigned at——, on the——day of——19——, to be used for (set out the use for which such liquors are ordered or the purpose for which they are to be used).

" 'Signed and dated at——, Tenn., this——day of ——, 19——.'

"And in no case shall any railroad company, express company, corporation, or common carrier or person, or agent of such railroad company, express company, corporation, or other common carrier or person, be liable for damages for not delivering such intoxicating liquor or package supposed to contain the same until such statement is executed and delivered as herein provided.

"And in no case shall any such railroad company, express company, corporation or other common carrier, person or the agent of any such railroad company, express company, corporation, or other common carrier, or person, be held liable or subject to the penalties prescribed in this act for delivering such intoxicating liquors or package to the consignee without requiring such a statement when such statement is executed and delivered as herein provided, unless the party taking such statement knows the same to be false, in

which case he may refuse to deliver such intoxicating liquors or package.

"Sec. 6. Be it further enacted, that any person who shall make the statement provided in section 5 of this act, knowing the same to be false, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be fined not less than one hundred dollars nor more than five hundred dollars, and be imprisoned in the county jail not less than thirty days nor more than ninety days, in the discretion of the court.

"Sec. 7. Be it further enacted, that it shall be unlawful for any railroad company, express company, corporation, or other common carrier or person, to deliver any intoxicating liquor to any minor.

"Sec. 8. Be it further enacted, that it shall be unlawful for any person to ship any intoxicating liquor from any point within this State without marking on the outside of the package containing such intoxicating liquors, where it can be plainly seen and read, the words: 'This package contains intoxicating liquor.'

"Sec. 9. Be it further enacted, that nothing in this act shall make it unlawful:

"1. For any person, for the use of himself or the members of his family residing with him, to personally carry and transport to his own home such intoxicating liquor in quantities not exceeding one gallon.

"2. For any person to order and have shipped and delivered to him, from without the State, for his own use or the use of the members of his family residing

with him, such intoxicating liquor in quantities not exceeding one gallon.

"3.  For any person, for his own use and the use of his family residing with him, to order from and have shipped and delivered to him such intoxicating liquor, in quantities not exceeding one gallon, from any point in this State where such liquor can be lawfully sold for the purpose for which it is ordered; provided, the person, firm, or corporation from whom such liquor is ordered or bought or by whom it is shipped is authorized by the laws of this State to sell liquor for the purpose for which it is ordered.

"4.  For any priest or minister of any religious denomination or sect to order, ship, or have shipped, carried, and delivered wine for sacramental purposes; or for any common carrier, corporation, or ship, transport, carry or deliver wine for said purposes to any priest or minister of any religious denomination or sect.

"5.  For any person, firm or corporation to order, ship, transport, carry, or deliver intoxicating liquor into and within this State for purposes for which such liquor can be lawfully sold under the laws of this State, and to a person lawfully authorized to sell such liquors.  But in all cases where any person, firm or corporation, carries and delivers any such intoxicating liquor for the purposes covered by subsections 2, 3, 4, 5 of this section, said person, firm, corporation, or carrier or the agent of any such firm, person, corporation, or carrier, shall require of the consignee a statement

in writing, to be signed by such consignee, similar in form to the statement set out in section 5 hereof, showing the purpose for which said liquor has been ordered and is to be used, and, in cases covered by subsection 5 of this section, that the consignee is authorized by law to sell such liquor for the purpose for which it was ordered and delivery is sought; and any person who shall make a false statement in regard to the purpose for which said liquors are sought and are to be used or are used, shall be subject to the penalties prescribed in section 6 hereof.

"Sec. 10. Be it further enacted, that the delivery for shipment, the shipment, carriage, transportation, and delivery to the consignee of such liquors within the prohibition of this act from one point in this State to another point within this State, shall be deemed a continuing offense; and both the circuit and criminal courts held in the county from or to which such shipments are made, or in which delivery of any such shipment is made, shall have jurisdiction for the trial of any and all violations of this act, and the grand juries of said counties shall be vested with inquisitorial powers over violations of this act, and the circuit and criminal judges shall call attention to this act in charging the grand jury.

"Sec. 11. Be it further enacted, that any person, firm, or corporation violating any of the provisions of this act, except as hereinbefore expressly provided, shall, upon conviction, be fined not less than one hundred dollars and not more than five hundred dollars

for each offense, and, in the discretion of the court, may be confined not less than thirty nor more than sixty days in the county jail.

"Sec. 12. Be it further enacted, that no person shall be excused from testifying either before the grand jury or on the trial in any prosecution for violating this act; but no disclosure or discovery made by such person shall be used against him in any penal or criminal prosecution for and on account of the matters disclosed.

"Sec. 13. Be it further enacted, that a conviction for violation of any of the provisions of this act may be had on the unsupported evidence of any accomplice or participant, and such accomplice or participant shall be exempt from prosecution for any offense under this law about which he may be required to testify.

"Sec. 14. Be it further enacted, that if for any reason any section or part of this act shall be held to be unconstitutional or invalid, then that fact shall not invalidate any other part of this act, but the same shall be enforced without reference to part so held to be invalid.

"Sec. 15. Be it further enacted, that in any indictment or presentment for any violation of this act it shall not be necessary to negative the exceptions herein contained or that the intoxicating liquor was ordered, shipped, transported, or delivered for any of the purposes set out in section 9 hereof; but such exception may be relied upon as a defense, and the burden of es-

tablishing the same shall be upon the person claiming the benefit thereof.

"Sec. 16. Be it further enacted, that all acts and parts of acts in conflict with the provisions of this act are hereby repealed.

"Sec. 17. Be it further enacted, that this act shall take effect from and after its passage, the public welfare requiring it.

"Passed October 16, 1913."

The original bill was filed on November 6, 1913, by Walter O. Palmer, a resident of Davidson county, and was brought against the Southern Express Company, which was described as "one of the few large express companies serving the public in this section of the United States."

The bill alleged that the complainant had ordered and purchased by mail order from dealers in liquors in Louisville, Ky., one gallon of a certain kind of intoxicating liquors, and fifteen gallons of a certain other kind of intoxicating liquors, and had directed them to be shipped to him by express to Nashville, and that this order was received and accepted at Louisville, and that the liquors were thereupon shipped to complainant at Nashville over the Southern Express Company in seven packages, one containing the one gallon of liquors first mentioned, and six "cases" containing each about 2½ gallons, constituting the other fifteen gallons, said liquors being of the value of $3.50 a gallon, and that these packages reached Nashville over

the Southern Express Company about November 5, 1913, and that complainant was promptly notified, and called at defendant's office to receive them, and pay the express charges.

The bill further alleged that complainant is engaged in farming and live stock breeding, and is not engaged in the liquor business, and that he purchased these liquors solely for his own use, and for the use of his family residing with him.

Complainant further alleged that the defendant offered to deliver the one-gallon package of liquors to him only upon condition that he would make and deliver the statement required of consignee by the fifth section of the act, and that he protested against this, but finally made and delivered a written statement in conformity with the terms of the act, and thereupon received the one-gallon package.

He alleged that the defendant refused to deliver to him either of the six cases containing 2½ gallons each unless he would make and deliver a statement in writing that he was and is authorized by law to sell such liquors for some stated and specific lawful purpose, and which statement should further contain all the recitals prescribed by sections 5 and 9 of the act, and that he declined to sign any such statement, for which reason the delivery of the six cases was withheld.

The bill alleged that section 3 of the act, requiring express companies and other carriers, when they transport intoxicating liquors from another state into Ten-

129 Tenn. 9

nessee, to file "a statement in writing" showing the facts therein mentioned, does not prescribe any rule for the government of the consignee, or regulate the use or disposition of the liquors transported, but imposes on such carriers duties with respect to transportation which have been ended and completed, duties which are onerous and expensive to carriers, vexatious and annoying to consignees, and which not only constitute burdens on interstate commerce, but violate the liberty of the citizen, his right of privacy, and is in violation of section 8 of article 1 of the constitution of Tennessee, and of the fifth and fourteenth amendments of the constitution of the United States.

It was further alleged that the contents of said packages are marked thereon; also the name of the complainant as consignee; likewise the name of the Paul Jones Company, the consignor; and that they could be identified thereby.

The bill prayed for an injunction to restrain defendant from filing the above-mentioned "statement in writing," and such an injunction was granted and executed on the filing of the bill.

The bill further alleged that so much of the terms of the act as assumed to prohibit a person from having shipped and delivered to him from without the State, for his own use, or the use of the members of his family residing with him, intoxicating liquors in quantities exceeding one gallon, was unconstitutional and void, for the reason that such provision was an interference with, and burden on, interstate commerce,

Palmer v. Express Co.

and because it was lawful, under the laws of Tennessee, for a citizen of Tennessee to own and keep intoxicating liquor in an unlimited quantity, and because it was lawful, under the laws of the United States, for a citizen of Tennessee to purchase by interstate commerce intoxicating liquors in unlimited quantity; and complainant averred that, for these reasons, he was entitled to receive the six cases hereinabove referred to on demand and. payment of the charges, and that he could not lawfully be required to make and deliver the statement prescribed by sections 5 and 9 of the act as demanded of him by the defendant express company.

Upon this ground complainant sought a writ of replevin to recover the six cases, and such writ was granted upon the filing of the bill, and the officer executing the writ took the cases and delivered them to complainant.

The bill further averred that the entire act was void upon the ground that it contained two subjects.

The defendant demurred, challenging the correctness of the legal conclusions on which the bill was predicated, and assserting the validity and constitutionality of the act in all of its parts.

More particularly the demurrers asserted the validity of the two provisions of the act that were primarily attacked in the bill, namely: The provision requiring carriers to file "statements in writing" with the county court clerks, and the provision in regard to the "one-gallon" limitation.

The cause was heard on the demurrers.

The chancellor was of opinion and decreed that the two provisions of the act that were primarily attacked were, in respect of interstate shipments into Tennessee of intoxicating liquors for personal use and consumption, an unlawful burden upon and interference with interstate commerce, and were therefore unconstitutional and void, and that, upon the facts stated in the bill, complainant was entitled to the relief prayed for. The decree entered broadly sustained the bill, and overruled the demurrers.

Defendant, through its counsel, thereupon stated in open court—as appears in the decree—that "the averments of fact in the original bill were not and would not be controverted, and that it desired to stand on the demurrers," whereupon the chancellor granted an appeal to this court.

The general contentions of the complainant on the brief filed may be thus summarized: That certain provisions of the act are void under the constitution of the United States because they regulate interstate commerce; that one provision is void because it violates an act of congress regulating the duties of interstate carriers; that the recent act of congress, known as the Webb-Kenyon Act, has no application to the case, and that in any event that act is void; that the whole act of 1913, reproduced supra, is void as being in violation of article 2, sec. 17, of the constitution of Tennessee. The other questions suggested in the bill were not discussed in the brief.

1. It is insisted that section 5 is an attempted regulation of interstate commerce by the State, and therefore void, in that it imposes as a condition of delivery of the goods the making by the consignee of the written statement therein required.

We are unable to perceive any sound answer to this contention. Intoxicating liquor is recognized in the federal authorities as a lawful subject of interstate commerce. In *L. & N. R. R. Co.* v. *Cook Brewing Co.,* 223 U. S., 82, 32 Sup. Ct., 191, 56 L. Ed., 355, it is said: "By a long line of decisions, beginning even prior to *Leisy* v. *Hardin,* 135 U. S., 100 [10 Sup. Ct., 681, 34 L. Ed., 128.], it has been indisputably determined: (a) That beer and other intoxicating liquors are a recognized and legitimate subject of interstate commerce; (b) that it is not competent for any State to forbid any commerce carrier to transport such articles from a consignor in one state to a consignee in another." In *Leisy* v. *Hardin,* it is said: "That ardent spirits, distilled liquors, ale, and beer are subjects of exchange, barter, and traffic, like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of congress, and the decisions of courts, is not denied." 135 U. S., 100, 110, 10 Sup. Ct., 681, 684 (34 L. Ed., 128). In *Vance* v. *Vandercook Co.,* it is said: "Equally well established is the proposition that the right to send liquors from one State into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the constitution

of the United States to congress, and hence that a
State law which denies such a right, or substantially
interferes with or hampers the same, is in conflict with
the constitution of the United States." 170 U. S.,
444, 18 Sup. Ct., 676, 42 L. Ed., 1100. Delivery is an
essential part of interstate commerce in any article
transported from one State to another in course of
that commerce, and cannot be interfered with by the
State. In *Rhodes* v. *Iowa,* 170 U. S., 412, 419, 18 Sup.
Ct., 664, 666 (42 L. Ed., 1088), the court, referring to
*Bowman* v. *Chicago & Northwestern R. Co.,* 125 U.
S., 465, 8 Sup. Ct., 689, 1062, 31 L. Ed., 700, said: "The
fundamental right which the decision in the *Bowman
case* held to be protected from the operation of State
laws by the constitution of the United States was the
continuity of shipment of goods coming from one State
into another from the point of transmission to the point
of consignment, and the accomplishment there of the
delivery covered by the contract." In *L. & N. R. R.
Co.* v. *Cook, supra,* it is said that one point clearly
settled by prior decisions is: "That, until such trans-
portation is concluded by delivery to the consignee,
such commodities do not become subject to state regu-
lation, restraining their sale or disposition." In *Wel-
ton* v. *Missouri,* 91 U. S., 281, 23 L. Ed., 347, it is
said: "The power which insures uniformity of com-
mercial regulation must cover the property which is
transported as an article of commerce from hostile or
interfering legislation until it has mingled with and
becomes a part of the general property of the country,

and subjected like it to similar protection, and to no greater burdens. If, at any time before it has thus become incorporated into the mass of property of the State or nation, it can be subjected to any restrictions by State legislation, the object of investing the control in congress may be entirely defeated." In *Bowman* v. *Chicago & Northwestern R. Co.*, 125 U. S., 465, 8 Sup. Ct., 689, 1062, 31 L. Ed., 700, above referred to, it appeared that the plaintiffs had tendered to the railway company sundry barrels of beer, in Chicago, for the purpose of having the beer transported to a point in Iowa for sale. The company refused to receive the beer on the ground that there was a statute in Iowa (Code 1873, sec. 1553, as amended by Acts 21st Gen. Assem., ch. 66, sec. 10) which forbade any carrier to transport "between points," that is, to any point in the State, "any intoxicating liquors, without first having been furnished with a certificate from and under the seal of the county auditor of the county to which said liquor is to be transported or is consigned for transportation, or within which it is to be conveyed from place to place, certifying that the consignee or person to whom said liquor is to be transported, conveyed, or delivered, is authorized to sell such intoxicating liquors in such county;" that the certificate had not been furnished; and that the statute provided that the offense denounced in it should be held complete, and should be held to have been committed in any county of the State through or to which said intoxicating liquors should be transported, or in which they should

be "unloaded, for transportation, or in which said liquors are conveyed from place to place or delivered." The plaintiff sued the railway company in damages because of its refusal to receive and transport the barrels of beer offered. The case finally reached the Supreme Court of the United States, and that court held that the State statute was void so far as it applied to interstate commerce, and, in so holding, said:

"It is conceded, as we have already shown, that, for the purposes of its policy, a State has legislative control, exclusive of congress within its territory, of all persons, things, and transactions of strictly internal concern. For the purpose of protecting its people against the evils of intemperance it has the right to prohibit the manufacture within its limit of intoxicating liquors; it may also prohibit all domestic commerce in them between its own inhabitants, whether the articles are introduced from other State or from foreign countries; it may punish those who sell them in violation of its laws; it may adopt any measures tending, even indirectly or remotely, to make the policy effective until it passes the line of power delegated to congress under the constitution. It cannot, without the consent of congress, expressed or implied, regulate commerce between its people and those of the other States of the Union in order to effect its end, however desirable such a regulation might be.

"The statute of Iowa under consideration falls within this prohibition. It is not an inspection law; it is not a quarantine or sanitary law. It is essentially a

regulation of commerce among the States within any definition heretofore given to that term, or which can be given; and, although its motive and purpose are to perfect the policy of the State of Iowa in protecting its citizens against the evils of intemperance, it is none the less on that account a regulation of commerce." 125 U. S., 493, 8 Sup. Ct., 702, 31 L. Ed., 700.

We have seen that this case was referred to in a subsequent case as protecting the fundamental right of transporting goods by continuous shipment from a point in one State to a point in another State, "and the accomplishment there of the delivery covered by the contract."

It seems clear that section 5 of the act of 1913, in so far as it requires the certificate therein provided for, falls within the authorities referred to, and is void as a regulation of interstate commerce, imposing as it does a condition precedent, upon the exercise by the carrier of the right to make delivery, and upon the right of the consignee to receive delivery of the goods.

It is perceived, from the passage we have quoted out of *Bowman* v. *Railroad,* that the provision in question cannot be upheld on the ground that it is an exercise of the police power of the State, since that power in a state cannot transcend the constitution of the United States. *State* v. *Kelly,* 123 Tenn., 567-575, 133 S. W., 1011, 36 L. R. A. (N. S.), 171.

Nor can it be said that it has a mere incidental effect upon interstate commerce, and therefore, under

the authorities on that subject, must be held a harmless invasion of national power. Its action is direct, since it arrests delivery until the certificate is executed.

It cannot be treated as a means of inspection, with a view to excluding an impure article, and thus falling within the power conceded or reserved to the States, under article 1, sec. 10, of the Constitution, to pass inspection laws, subject to the revision and control of the congress. *Bowman* v. *Chicago, etc., Railroad, supra*, 125 U. S., 488, 8 Sup. Ct., 689, 1062, 31 L. Ed., 700. No claim, indeed, is made that the act was passed for any such purpose.

Nor truly can the claim be made that the provision falls within any of the other recognized exceptions to the operation of the interstate commerce clause of the constitution. The whole subject is luminously discussed in the recent opinion of Mr. Justice Hughes, in the *Minnesota Rate Cases* 230 U. S., 352, 398-412, 33 Sup. Ct., 729, 57 L. Ed. 1511, wherein the rule and its recognized exceptions or qualifications are stated.

The Wilson Act, which subjects intoxicating liquors to State regulation, although in the original packages, does not apply before actual delivery to the consignee, where the shipment is interstate, and hence has no bearing upon the question we have before us. *Louisville & Nashville Railroad Co.* v. *F. W. Cook Brewing Co.*, supra.

2. It is insisted that subsection 2 of section 9, when read and properly construed in connection with sec-

tion 1, operates also as a regulation of interstate commerce, so as to restrict deliveries to consignees of liquors shipped from other States into this State to one gallon at a time, where the liquors are intended for the personal use of the consignee, or the use of his family.

We see no escape from the conclusion that it is such regulation. The ultimate quantity to be obtained by multiplying separate shipments is not restricted. So far as anything appears in the act, the consignee can have made to him any number of separate shipments of liquors for his own use, or the use of himself and family; but no single shipment must exceed one gallon in quantity, and the shipments may be concurrent or successive. What is this but a regulation of commerce? It can be nothing else. There can be no doubt that such regulation would be very useful to the State in the enforcement of its prohibition laws, the requirements as to the certificate in section 3 being sustained, since many would hesitate to go on record for numerous shipments, and such as would dare to do so would, by the accumulation of multiplied gallons, aggregating a large and unreasonable quanity for alleged personal and family use, furnish ground for a strong inference, or violent presumption, that the real purpose was to store the liquors for illegal and surreptitious sale. But the question is, not alone whether it would be useful as a State police measure, but whether, although thus useful, it would be an un-

constitutional attempt at regulating interestate commerce.

That it is a regulation is indubitable; is it an unconstitutional regulation? Every new question must be determined on its own facts; but these facts must be brought to the test of recognized principle. The States have no power to impose a regulation on interstate commerce merely because it is a reasonable or judicious one. That is a function of the congress. It is a mere truism, of course, that the states have no right to regulate a subject of interstate commerce within the exclusive jurisdiction of congress because the congress has failed to act. The decisions of the supreme court of the United States are to the effect that, where congress has failed to impose any regulation in such cases, there is a conclusive presumption that it is the will of that body that the traffic shall remain free until such time as it shall see proper to act in the matter. There is, it is true, a broad field, embracing a great variety of subjects, in which the powers of the federal and State governments are concurrent, and in these the States may control until congress acts, and, when the latter acts, it is said to take possession of the subject, to the exclusion of the states, in respect of the special aspect so legislated on. There is also, as already indicated, an exclusive field into which the States cannot enter at all. The point is thus expressed by Mr. Justice Hughes in the *Minnesota Rate Cases,* supra:

"The grant in the constitution of its own force . . . established the essential immunity of interstate commercial intercourse from the direct control of the States with respect to those subjects embraced within the grant which are of such a nature as to demand that, if regulated at all, their regulation should be prescribed by a single authority. It has repeatedly been declared by this court that as to those subjects which require a general system or uniformity of regulation the power of congress is exclusive.

"In other matters admitting diversity of treatment according to special requirements of local conditions, the states may act within their respective jurisdictions until congress sees fit to act, and when congress does act, the exercise of its authority overrides all conflicting legislation." 230 U. S., 399, 33 Sup. Ct., 740, 57 L. Ed., 1511.

Instances of the latter class are seen in *Hennington* v. *Georgia,* 163 U. S., 299, 16 Sup. Ct., 1086, 41 L. Ed., 166; *Lakeshore, etc., R. R.* v. *Ohio, etc.,* 173 U. S., 285, 19 Sup. Ct., 465, 43 L. Ed., 702, and cases cited. The case of *Gulf Colorado & S. F. R. Co.* v. *Hefley,* 158 U. S., 98, 15 Sup. Ct., 802, 39 L. Ed., 910, was a case in which such regulation in the concurrent field by the State was superseded and rendered nugatory by an act of congress in conflict therewith.

The special questions we have before us, arising on the one-gallon regulation, and the regulation in respect of the certificate required by section 5, previously discussed, fall within that portion of the field which re-

lates to interstate commerce in its fundamental aspect, in which, as stated, the power of congress is exclusive. In the constitution of the United States it is provided: "Congress shall have power . . . to regulate commerce with foreign nations, and among the several States, and among the Indian tribes." It has been said over and over again, in the federal authorities, that the purpose of the provision was to secure uniformity of regulation. In *Oklahoma* v. *Kansas Nat. Gas Co.*, 221 U. S., 255, 31 Sup. Ct., 571, 55 L. Ed., 716, it is said: " 'In matters of foreign and interstate commerce there are no State lines.' In such commerce, instead of the States, a new power appears, and a new welfare, a welfare which transcends that of any State." In *Rhodes* v. *Iowa*, 170 U. S., 425, 18 Sup. Ct., 669, 42 L. Ed., 1088, it is said that the right to contract for the transportation of merchandise from one State into or across another involves "interstate, commerce in its fundamental aspect," and imports "in its very essence a relation which necessarily must be governed by laws apart from the laws of the several States," since it embraces "a contract which must come under the laws of more than one State."

Some illustrations may be useful. A statute of Kentucky made it unlawful to sell or furnish liquor to a known drunkard. A drunkard, named Tharp, residing in Kentucky, ordered liquor from Nashville, and the express company conveyed it and delivered it to him. It was held that Kentucky could not punish the company and its agent, both having been in-

dicted, because they were but performing an interstate commerce act, which the State could not regulate. The court said: "If such regulation of interstate commerce is deemed advisable, it must proceed from congress." *Adams Express Co.* v. *Kentucky,* 214 U. S., 219, 29 Sup. Ct., 633, 53 L. Ed., 972. A statute of New York required convict-made goods to be so branded before being exposed to sale. It was held to be void as to goods from other States because it was a regulation of interstate commerce. *People* v. *Hawkins,* 157 N. Y., 1, 51 N. E., 257, 42 L. R. A., 490, 68 Am. St. Rep., 737. A statute of Ohio required a license to be taken out for the sale of convict-made goods. It was held void as a regulation of commerce as to goods from other States. *Arnold* v. *Yanders,* 56 Ohio St., 417, 47 N. E., 50, 60 Am. St. Rep., 753. A statute of Kentucky forbade C. O. D. shipments of intoxicating liquor. It was held to be void as a regulation of interstate commerce. *Adams Express Co.* v. *Kentucky,* 206 U. S., 129, 27 Sup. Ct., 606, 51 L. Ed., 987.

It is apparent from the principles stated and authorities cited that the one-gallon regulation is wholly void in so far as it applies to interstate commerce.

In what has been said we have treated the question from the standpoint, which we believe to be the true one, that the regulations in question invade that field which is within the exclusive power of congress, interstate commerce in its fundamental aspect; but, if we err in this, the same result follows from viewing them

as falling within the concurrent field, since congress has already entered this field with sundry regulations, and has thus occupied the field, excluding any conflicting State regulations. First is the Interstate Commerce Act. Its provisions apply to all corporations engaged in the transportation of persons and property, and declares that the term "transportation" shall include "cars, . . . facilities of shipment or carriage, . . . all services in connection with the receipt, delivery, . . . and handling of property transported." Congress has regulated interstate commerce in intoxicating liquors as follows: The "Wilson Act," subjecting such liquors to the State laws upon arrival, that is, immediately upon delivery (3 Fed. Stat. Ann., 853); by a provision making it unlawful for a carrier to deliver to any person except the consignee, or on his written order (Crim. Code U. S., sec. 238); also making it unlawful to deliver to a fictitious person (Id.); also a provision making it unlawful for any carrier to collect the purchase price, or carry C. O. D. shipments of such liquors (Id., sec. 239); a provision making it unlawful for any person to ship any package of intoxicating liquors not so labeled on the outside as to show the name of the consignee, the nature of the contents, and the quanitity; and, finally, the Webb-Kenyon Act, to which we shall presently refer with more particularity. As complainant's brief soundly insists: Interstate transportation "is regulated by the Interstate Commerce Act—that is to say, all services

in connection with the receipt, delivery, and handling of the property transported. Necessarily that excludes all State action. But, specifically, congress has regulated the labeling; has provided that it may be delivered on the order of the consignee, that the liquor shall be subject to State laws on 'arrival,' which the courts have construed to mean delivery, and thereby necessarily declaring that the State laws shall not attach prior to delivery. Congress has provided against C. O. D. shipments; against shipments with intent to violate State laws by sale or use. It has placed no limit on quantity, and, instead of requiring a statement from the consignee, has provided what shall be marked on the outside of the package itself."

3. That part of section 5 which forbids the delivery of intoxicating liquors "to any person other than the consignee is void so far as it applies to interstate shipments, because in conflict with the federal statute on the same subject.

4. So far as section 8 applies to interstate shipments it is likewise void, because the subject is regulated by the federal statute.

5. The certificate provided for in subsection 5 of section 9 is likewise void in so far as it applies to interstate shipments, on the ground that it is a regulation of interstate commerce; the reasons being the same as those set forth in disposing of the question raised on the certificate required by section 5 of the act.

6. It is insisted in behalf of the state that the various provisions are saved by the Webb-Kenyon Bill, or Act. That act is as follows:

"An act divesting intoxicating liquors of their interstate character in certain cases.

"Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other State, territory or district of the United States or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either, in the original package or otherwise, in violation of any law of such State, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, is hereby prohibited."

It is perceived that the thing which the act prohibits is the interstate shipment or transportation of the liquors mentioned therein, when "intended by any person interested therein, to be received, possessed,

sold, or in any manner used, either in the original package or otherwise, in violation of any law of the State, etc., into which the shipment is made.

It is enough to say, for the disposition of the case before us, that it does not appear that the liquors shipped were intended to be sold, or used in violation of any law of the State; and therefore the act does not apply to the present controversy. It appears from the facts stated in the bill, confessed by the demurrer, and agreed to on the record at the hearing in the court below, that the liquors were purchased for the personal use of complainant and his family. This was a lawful use, and indeed permitted by the statute in question. And see, generally, Woolen & Thornton on Intoxicating Liquors, sec. 203, and cases cited. The fact that the purchase was in excess of one gallon cannot change the conclusion, or alter the result, because that regulation is void as being in violation of the interstate commerce clause of the federal constitution, and of the Interstate Commerce Act passed thereunder. If the said Webb-Kenyon Act can be held operative for the purposes designed, it must be on the ground that liquors shipped tainted by the intention designated are, by the act, withdrawn from interstate commerce; that is, are, by the existence of the illegal intention, rendered noncommerce articles. Such seems to be the thought indicated by the caption of the bill. But this bill has no reference to quantity, but only to *sale,* or *use,* in violation of any law of the State. The act, therefore, does not apply to the present controversy.

A vigorous attack is made on the constitutionality of the act, supported by a very interesting and able discussion by the point; but we do not deem it essential, or even proper, to go into this question, since the view already stated is sufficient to dispose of the case in so far as the Webb-Kenyon Act relates to it.

But, before passing from this phase of the case, we desire to add, in order that the present opinion may not be misunderstood, that what we have just held as to the inapplicability of the Webb-Kenyon Act to the case before us is not intended to cover those instances in which sales of liquors are made in a foreign State for shipment into this State to be sold or used in violation of the prohibition laws of this State. A discussion of the illegal nature of such contracts, and the circumstances under which they are to be held illegal, is found in section 1015 of Woolen & Thornton on the Law of Intoxicating Liquors, and the cases cited in the notes. What we have said as to the certificates, or statements, or supercriptions on the packages, we apply in the present opinion only to intoxicating liquors shipped into this State for the personal use of the consignee and his family; that only being the nature of the case before us. Nor do we desire to be understood as expressing any opinion as to whether there can be constitutionally withdrawn from the operation of the interstate commerce laws, an article otherwise of a commercial nature, where the illegal intent is not found either directly or circumstantially to have existed at the time in the mind of the seller, as well as in the

mind of the buyer. How far such power exists in the congress we have not considered. In short, the present opinion is confined only to the cases wherein the shipment is for the personal use of the consignee or his family. It is for the personal use of the consignee or his family. It is our duty to so confine the decision. Woolen & Thornton, Intox. Liq., sec. 186, and cases cited. The complainant belonging only to the class of those who buy for personal and family use has no interest in any other phase of the questions involved, and cannot call on the court for a decision in respect thereof. *Kelly* v. *State,* 123 Tenn., 516, 553-555, 132 S. W., 193; *Richardson* v. *Young,* 122 Tenn., 524, 125 S. W., 664.

7. It is insisted that the provisions of section 3 of the act in question are void as a regulation of interstate commerce. We are of a contrary opinion. The section referred to prescribes the "statement in writing" therein required of the carrier to be filed after delivery, and therefore after the interstate transaction has been completed. It is true that it imposes a new duty on an interstate carrier. States, however, have this right, when such duty does not impose a direct burden upon interstate commerce, and when congress has not itself legislated upon the special question. Congress has not so legislated, and the provision can have only a very incidental effect on interstate commerce. *Hennington* v. *Georgia,* supra; *Lakeshore, etc., R. R.* v. *Ohio, etc.,* supra; *Gulf Colorado & S. F. R. Co.* v. *Hefley,* supra. The provisions in question, there-

fore, are valid so far as concerns the operation of the interstate commerce laws.

8. But it is insisted that section 3 is in conflict with the following congressional legislation, viz.:

"It shall be unlawful for any common carrier subject to the provisions of this act, or any officer, agent, or employee, of such common carrier, or for any other person or corporation lawfully authorized by such common carrier to receive information therefrom, knowingly to disclose to or permit to be acquired by any person or corporation other than the shipper or consignee, . . . any information concerning the nature, kind, quantity, designation, consignee, or routing of any property tendered or delivered to such common carrier for the interstate transportation, which information may be used to the detriment or prejudice of such shipper or consignee, or which may improperly disclose his business transactions to a competitor; and it shall also be unlawful for any person or corporation to solicit or knowingly receive any such information which may be so used: Provided, that nothing in this act shall be construed to prevent the giving of such information in response to any legal process issued under the authority of any State or federal court, or to any officer or agent of the government of the United States, or of any State or territory, in the exercise of his powers, or to any officer or other duly authorized person seeking such information for the prosecution of persons charged with or suspected of crime; or information given by a common carrier . . .

or its duly authorized agent, for the purpose of adjusting mutual traffic accounts in the ordinary course of business of such carriers.''

We do not think section 3 is in conflict with this federal legislation. Its provisions are fairly within one of the exceptions of the federal act, viz.: ''That nothing in this act shall be construed to prevent the giving of such information . . . to any officer or agent . . . of any State or territory, in the exercise of his powers.'' Sections 3 and 4 impose upon the county court clerk the duty of receiving and filing such statements for the information of the public. The information thus obtained is obtained by him ''in the exercise of his powers'' pursuant to a duty imposed on him by law. It is true that he is the mere recipient of the information, not being required to go out of his office and demand it of the carrier. But we do not conceive that this could make any sort of difference. It could not be doubted, we think, that, if sections 3 and 4 had required the county court clerk to demand the information, it would have been the duty of the carrier to give it, within the exception mentioned. How can the substance of the matter be altered by the fact that the State statute itself, the whole State in its organized capacity, makes the demand of the carrier to give the information, and makes it the duty of the county court clerk to receive and file it? Moreover, the federal statute in question does not, in the exception we have quoted, require as a condition precedent to its effectiveness that any demand shall be made by an officer

of the State. The heart of the matter, the substance, is that the information may be given to a State, through an officer or agent in the exercise of his powers. The method by which the State shall require that information or signify its desire to receive it is not material. In what more authoritative manner could it be required or could such desire be signified than by a solemn public act of the legislature of the State, making it the duty of the carrier to communicate the information to a designated officer of the State, and making it the duty of that officer to receive and file the certificate or statement containing the information?

Furthermore, we are of the opinion that the statute quoted can have but a limited application to an article of commerce as to which a federal law requires that the packages containing it shall "be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity therein." Crimes Act, ch. 1, sec. 240. This act evinces a purpose on the part of the congress that the traffic in intoxicating liquors shall have the greatest publicity.

9. It is insisted that the act under review is void, because the body is broader than the title, and because it contains two subjects in violation of article 2, sec. 17, of the State constitution.

Article 2, sec. 17, provides: "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

The proposition that the body of the act is broader than its title is founded on the criticism that, while the title purports only regulation, the body of the act imports prohibition. If this be a sound criticism, the act is necessarily void. It is true the title indicates regulation only. Does the body contain prohibition?

The cases in our books construing and applying article 2, sec. 17, of the Constitution are very numerous. Those up to 90 Tenn. are collected in *Hardaway* v. *Lilly* (Ch. App. 1898), 48 S. W., 712. Those appearing in 90 Tenn. to 116 Tenn., inclusive, are catalogued in *Malone* v. *Williams*, 118 Tenn., 438, 103 S. W., 798, 121 Am. St. Rep., 1002. The cases which have been published since that time on this important subject are *Dixon* v. *State*, 117 Tenn., 79, 94 S. W., 936; *Gilley* v. *Harrell*, 118 Tenn., 115, 101 S. W., 424; *Malone* v. *Williams*, 118 Tenn., 390, 103 S. W., 798, 121 Am. St. Rep., 1002; *State ex rel.* v. *Taylor*, 119 Tenn., 229, 104 S. W., 242; *Railroad* v. *Byrne*, 119 Tenn., 278, 104 S. W., 460; *Knoxville* v. *Gass*, 119 Tenn., 438, 104 S. W., 1084; *Rhinehart* v. *State*, 121 Tenn., 420, 117 S. W., 508, 17 Ann. Cas., 254; *Acklen* v. *Thompson*, 122 Tenn., 43, 126 S. W., 730, 135 Am. St. Rep., 851; *Ledgerwood* v. *Pitts*, 122 Tenn., 570, 125 S. W., 1036; *Ransom* v. *Rutherford County*, 123 Tenn., 1, 130 S. W., 1057, Ann. Cas., 1912B, 1356; *Coke & Coal Co.* v. *Steel Co.*, 123 Tenn., 428, 131 S. W., 988, 31 L. R. A. (N. S.), 278; *Kenny* v. *State*, 123 Tenn., 516, 132 S. W., 193; *Darnell* v. *State*, 123 Tenn., 663, 134 S. W., 307; *State ex rel.* v. *Folk*, 124 Tenn.,

119, 135 S. W., 776; *Scott* v. *Marley,* 124 Tenn., 388, 137 S. W., 492; *Jackson* v. *Manufacturing Co.,* 124 Tenn., 421, 137 S. W., 757; *State ex rel.,* v. *Powers,* 124 Tenn., 553, 137 S. W., 1110; *Kirk* v. *State,* 126 Tenn., 7, 150 S. W., 83, Ann. Cas., 1913D, 1239; *Weil* v. *Newbern,* 126 Tenn., 223, 148 S. W., 680, Ann. Cas., 1913E, 25; *Railroad* v. *Memphis,* 126 Tenn., 267, 148 S. W., 662, 41 L. R. A. (N. S.), 828, Ann. Cas., 1913E, 153; *Brown* v. *Sullivan County,* 126 Tenn., 689, 151 S. W., 50; and see *Harris* v. *Hamby,* 114 Tenn., 361, 84 S. W., 622.

The principles on which the court acts are thus laid down in *Hardaway* v. *Lilly,* supra, after a review of the decisions up to that time, viz.:

"The foregoing affirmative and negative cases comprise substantially all of the decisions upon the subject appearing in the published volumes of our State reports. We think it is apparent, from an examination of these cases, that the rule laid down in *Cannon* v. *Mathes,* supra [8 Heisk. (Tenn.), 504], has been very thoroughly adhered to, and that in furtherance of that liberal construction in favor of the validity of the acts of the legislature, which is the declared policy of this State, upon the question in hand, occasionally a somewhat strained interpretation has been given both to the title and to the subject-matter of the acts under consideration. Very few instances, if any, can be found among the cases cited where the body of the act was declared to be repugnant to the title, unless such repugnancy was in fact clear and unmistakable.

On the other hand, we have instanced several cases in which the court with painstaking care has extricated a simple and general title out of more or less irrelevant matter, and has found the body of the act to be in conformity with such general subject, and sometimes has exercised its power of construction upon the body of the act. In all of these cases the evident purpose of the court is apparent to yield to a co-ordinate branch of the government the consideration which is due to it as the immediate representative of the people to declare policies and give them the force of law. The court has kept before it always in these cases, as the pole star of construction, that the purpose of the constitutional provision governing the inquiry was to prevent omnibus legislation and confusion in the minds of members of the legislature, and misleading as to the real purpose and scope of acts brought before the legislature. It is clear, from a perusal of the above-mentioned cases, although the precise point may not be fully brought out in the excerpts we have made, that while no act can constitutionally have in its title more than one subject, and while that subject as it appears in the body of the act must fall under the title, yet that a multitude of particulars may be thus embraced under a general subject, each of them in some way leading, directly or indirectly, to the furtherance of the general purpose appearing in the title.

"It is also clear that, in construing both the title and the body of an act, the court must not manifest

a narrow and jejune purpose, but rather must have in view the sustaining of the act under consideration, if it can be done in harmony with the fair meaning of the language, viewed in a large and generous relation to the subject-matter of the legislation. This results from the settled policy of the court upon constitutional questions, to resolve all doubts in favor of the constitutionality of an act of the legislature assailed for unconstitutionality. As said by the supreme court, speaking through Mr. Justice Caldwell, in *Manufacturing Co.* v. *Falls,* 90 Tenn., 469, 16 S. W., 1046: ''It is well to observe in the outset that all intendments are in favor of the constitutionality of an act of the legislature passed with the forms and ceremony requisite to give it the force of law, and that, where one construction will make a statute void on account of conflict with the constitution, and another would render it valid, the latter will be adopted by the courts, even though the former, at first view, be otherwise the more natural interpretation of the language used.' ''

The foregoing principles have been substantially adhered to in all subsequent cases. The only addition that need be made is that the court has since held (in *Knoxville* v. *Gass,* 119 Tenn., 438, 104 S. W., 1084) that, even if the title be double, the act will be saved, if only one of the subjects be embraced in the body of the act, since the body need not be as broad as the title.

Recurring, now, to the question whether the body of the present act is broader than the title: It is insisted for the complainant that, while the title expresses only regulation, the body embraces prohibition. We think it very clear that the body of the act imports merely regulation. It is true that section 1 provides "that it shall be unlawful" for any person, firm, or corporation to ship or transport any intoxicating liquors into the State, or to deliver it within the State, "except as hereinafter provided;" but the subsequent · sections make clear that what is meant is that it shall be unlawful to do so except in the manner .prescribed, that it to say, pursuant to the regulations therein provided. There is, to be sure, the provision concerning the one-gallon shipments for personal use; but in what has been said in a previous part of the opinion we believe it has been fully shown that this was only a regulation, and not a prohibition, since there was no limit to the quantity that might be obtained by contemporaneous or successive shipments.

10. Does the body of the act embrace more than one subject? It is insisted that a distinct subject appears in section 4 in these words: "And said certified copy shall be competent evidence in any of the courts of this State upon the trial of any cause whatsoever in which the same may be material." The reasoning runs thus: That section 3 requires a statement to be made out by the carrier, and filed with the county court clerk, showing certain facts, among others, the name and post office address of the consignor and con-

signee; that there are numerous cases in which the name or post office address of a person mentioned in a shipment as consignee will be very material, and which cases have no relation whatever to shipments and deliveries of intoxicating liquors; and that yet this act makes that copy admissible and competent evidence to prove such facts. For example, the question whether notice of the protest of a note was sent to the indorser involves an inquiry as to his post office; a bequest in a will to a man by a certain name involves an inquiry as to the man's name. It is said that here is a new species of evidence created by this act, and made competent in all cases in which it may be material; that it is a distinct subject, a distinct rule of substantive law; that, if the act had said that the statement should be evidence in all prosecutions of the consignee for making a false statement, or for violating the act, or even that it might be evidence in suits between the consignor, consignee, and carrier about the transaction, there might be ground upon which to say that it was germane, but that it goes far beyond this, to the extent already stated.

The rule of law applicable to this subject is that, if there be two constructions to which an act is susceptible, one of which will make it unconstitutional, and the other of which will save it, the duty of the court is to adopt the latter, although it is not the most obvious or natural construction. *Manufacturing Co.* v. *Falls,* 90 Tenn., 469, 16 S. W., 1045; *State ex rel.,* v. *Schlitz Brewing Co.,* 104 Tenn., 715,

59 S. W., 1033, 78 Am. St. Rep., 941; *Samuelson* v. *State.* 116 Tenn., 470, 498, 95 S. W., 1012, 115 Am. St. Rep., 805; *Railroad* v. *Byrne,* 119 Tenn., 278, 291, 292, 104 S. W., 460; *Darnell* v. *State,* 123 Tenn., 663, 134 S. W., 307; *Kirk* v. *State,* 126 Tenn., 7, 150 S. W., 83, Ann. Cas., 1913D, 1239. In *Samuelson* v. *State* it is said: "While it is true that, in arriving at the meaning of the legislature, primarily, the grammatical sense of the words used is to be adopted, yet if there is any ambiguity, or if there is room for more than one interpretation, the rules of grammer will be disregarded where a too strict adherence to them would raise a repugnance or absurdity, or would defeat the purpose of the legislature. *Garby* v. *Harris,* 7 Exch., 591; *Met. Bo. Wks.* v. *Steed,* L. R., 82, B. Div., 445; *George* v. *B. of E.,* 33 Ga., 344; *State* v. *Heman,* 70 Mo. 441. Many cases might be cited in which the future tense has been read as including the present and the past, where that was necessary to carry out the meaning of the legislature. Thus an enabling act relating to married women who 'shall come into the state' may apply to one who came into the state before the passage of the law. *Maysville & L. R. Co.* v. *Herrick,* 13 Bush (Ky.), 122. Where an act provided that certain land 'shall be allotted for and given to' an individual named, it was held that the words passed an immediate interest. *Rutherford* v. *Green,* 2 Wheat., 196, 4 L. Ed., 218. In *Babcock* v. *Goodrich,* 47 Cal., 488, the phrase 'current expenses of the year' was made to read, 'expenses of the current year;' it being evident

that the latter form of words more correctly expressed the legislative intent. These cases are but a recognition of an old and well-established rule of the common law, applicable to all written instruments, that *'verba intentioni, non e contra debent inservire'*; that it to say, words ought to be made subservient to the intent, and not the intent to the words." The case of *Darnell* v. *State,* supra, furnishes a strong example in close analogy. In that case the court, after mentioning the fact that there were only two assignments that needed to be considered, said: "The first of these is that the act under which the jury was impaneled, commonly known as the 'jury law of Franklin county' (Acts 1905, ch. 233), is unconstitutional, because the body of the act is broader than its title. The contention is based upon the following: The act is entitled 'An act to create a board of jury commissioners for counties in this State having a population of not less than 20,292, and not more than 20,400 inhabitants according to the federal census of 1900, or that may have that number of inhabitants by any subsequent federal census.' After making various and sundry provisions to carry out the purposes indicated by the title, section 19 follows, near the close, in this language: 'Be it further enacted, that the provisions of this act shall apply to all grand and petit juries in circuit and criminal courts of this State.' The same question was decided against plaintiff in error's contention in the case of *Allen Damron* v. *State,* from Bedford county, at the

December term, 1909. *Damron's Case* involved the jury law of Bedford county (chapter 355 of the Acts of 1907), which was a substantial copy of the Franklin county jury law involved in the present case. That case was thoroughly considered by the court, after full argument, oral and written, and a second time on petition to rehear filed by the plaintiff in error. The court held, upon a consideration of the whole statute, that it was the evident intention of the legislature that the section just quoted should be construed as if it read as follows, viz.: 'That the provisions of this act shall apply to all grand and petit juries in all circuit and criminal courts of this State in counties of the population herein prescribed.' We are of the opinion this was a sound construction, and we adhere to it.''

So, in the case before us, we construe the provisions complained of as applying to any cause or controversy whatsoever arising under the act. This is also a natural and reasonable construction, as we think, because it applies the language of the legislature to the subject about which, and in which, that body was engaged, and to which the minds of its members were directed. While it is true the language employed would bear the meaning attached to it in the argument, we think the more reasonable view would be to confine its generality to the subject which the legislature has in hand.

We hold, therefore, that the act is not void under our State constitution.

The result is the decree of the chancellor is affirmed in part, and reversed in part, and a decree will be entered here in accordance with this opinion.

The costs of this court and of the court below will be equally divided between the parties.

By consent of defendant express company the State of Tennessee was permitted to intervene in this court and take charge of and conduct the defense. A brief was therefore filed by Hon. F. M. Thompson, attorney-general of the State, and the case was also argued orally by him at the bar of the court.