LOUISVILLE & NASHVILLE RAILROAD CO. *v.* F. W. COOK BREWING CO.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 64. Submitted November 13, 1911.—Decided January 22, 1912.

This court has jurisdiction of an appeal from the Circuit Court of Appeals in this case, as the jurisdiction of the Circuit Court did not depend only on diversity of citizenship, but the constitutionality of a state law and the construction of a Federal statute were also involved.

Where relief in equity may be admissible under any circumstances at all, the objection of adequate remedy at law comes too late when made for the first time in this court.

Where a common carrier threatens to abjure its functions and duties as such in regard to a commodity, equity can grant relief to a dealer in such commodity whose business would be ruined by such continual action by the common carrier.

Beer and other intoxicating liquors are a recognized and legitimate subject of interstate commerce.

A State cannot forbid a common carrier to transport intoxicating liquors from a consignor in one State to a consignee in another State.

Until transportation of intoxicating liquor from one State to another is concluded by delivery to the consignee, the article transported does not become subject to state regulation.

The Wilson Act of August 8, 1890, c. 728, 26 Stat. 313, does not apply to interstate shipments of liquor until delivery to the consignee.

The Kentucky statute of 1906, prohibiting common carriers from transporting intoxicating liquors to "dry" points in Kentucky, while a valid enactment as to intrastate shipments, was not effective as to interstate shipments; in that respect it was an unconstitutional interference with interstate commerce.

A state statute regulating shipments of common carriers, although legal as to intrastate shipments, if illegal as to interstate shipments imposes no obligation upon the carrier in regard thereto, nor affords any excuse for refusal to perform its duties as a carrier.

Where the action of the common carrier is not discriminatory and the question is not an administrative one within the scope of the Interstate Commerce Commission, a question of general law as to the duties of the carrier arises which is one for a judicial tribunal, and not competent for the Commission; and the fact that the carrier may have filed notice with the Commission does not give it jurisdiction of the subject.

Where reasonableness of, or discrimination in, rates, is not an element, but the common carrier bases a refusal to perform its duty as such on legislative enactments, a shipper can resort to the courts to compel him to do so without first obtaining a finding from the Interstate Commerce Commission. *Texas & Racific Railway* v. *Abilene Cotton Oil Co.*, 204 U. S. 246, distinguished.

172 Fed. Rep. 117, affirmed.

THIS suit started in a court of the State of Indiana and was removed by the defendant, now the appellant, to the Circuit Court of the United States.

The Brewing Company is an Indiana corporation, engaged in brewing beer at Evansville, Indiana, and sells its product in state and interstate trade. The Railroad Company is a Kentucky corporation, owning and operating a line of railway extending into many States, including Indiana and Kentucky.

The complaint averred, that although prepayment of freight had been tendered and every shipping regulation complied with, the railroad company had refused to accept for carriage from Evansville, Indiana, to stations on the line of its railway in the State of Kentucky, beer in kegs and cases, consigned to points which were "local option" or "dry" localities under the law of Kentucky, and had notified complainant and the public that it would discontinue receiving consignments of beer or other liquors for points in the State of Kentucky where the local option law of that State was in operation. The prayer of the bill was that the railroad company be enjoined from so refusing to accept the product of the brewing company for transportation from Evansville to such local option points in Kentucky.

A preliminary injunction was issued as prayed. Thereupon the defendant removed the case to the Circuit Court of the United States, upon the ground that there was diversity of citizenship, and also because the case involved questions arising under the Constitution and laws of the United States, namely, the validity of the law of Kentucky prohibiting the transportation and delivery of liquors to points in that State where the sale was prohibited, and also as a case arising under the act of Congress regulating interstate commerce of February 4, 1887, 24 Stat. 379, c. 104, as amended June 29, 1906, 34 Stat. 584, c. 3591. An answer was then filed and the cause heard upon bill and answer, with the result that the preliminary injunction allowed by the state court was made permanent and the railroad company enjoined from refusing to receive and carry beer from Evansville to any point upon its line of road in the State of Kentucky, wet or dry. An appeal by the railroad company to the Circuit Court of Appeals resulted in an affirmance of the order of the Circuit Court. For the opinion, see 172 Fed. Rep. 117.

Mr. Henry L. Stone and Mr. Philip W. Frey, with whom Mr. George R. DeBruler was on the brief, for appellant:

Shipments of beer or intoxicating liquor are interstate shipments, and as such constitute interstate commerce, and are regulated and to be governed by the provisions of the Act to Regulate Commerce and the amendments thereto. See § 1, as amended June 29, 1906; § 3, commonly known as the discrimination section, and §§ 13, 15 and 16, which prescribe the methods of civil procedure for the enforcement of the orders of the Commission where the carrier fails or neglects to obey the same.

This machinery was provided by Congress for the regulation of interstate commerce and the redress of all grievances and was intended to be exclusive of all other remedies for all unlawful acts of the carriers. *Central Stock Yards* v. *L. & N. R. R. Co.*, 112 Fed. Rep. 823; *Texas & Pacific. Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *Howard Supply Co.* v. *Ches. & Ohio Ry. Co.*, 162 Fed. Rep. 188; *Balt. & Ohio R. R. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 481; *Danciger* v. *Wells, Fargo & Co.*, 154 Fed. Rep. 379.

The order granting the preliminary injunction is void, because the state court of Indiana in which the suit started thereby undertook to affect property and rights of the parties beyond its territorial jurisdiction, or that of the Circuit Court into which the case was removed. The state court had no power to grant a mandatory injunction requiring appellant to perform acts in Kentucky affecting property in that State. 11 Cyc. 684; *Western Union Teleg. Co.* v. *West. & Atl. R. R. Co.*, 8 Baxter (Tenn.), 54.

After removal, it was the duty of the court below to dissolve the temporary restraining order and dismiss the action. *Auracher* v. *Omaha & St. L. Ry. Co.*, 102 Fed. Rep. 1; *Swift* v. *Phila. & Reading R. R. Co.*, 58 Fed. Rep. 858; *Sheldon* v. *Wabash R. R. Co.*, 105 Fed. Rep. 785.

A party on whose petition a cause is removed into the

Federal court is estopped to deny the jurisdiction of such court to render judgment against him therein *unless* on the ground that the state court was without jurisdiction. *Cowley* v. *Northern Pac. Ry. Co.*, 159 U. S. 569; *Mastin* v. *Chicago, R. I. & P. Ry. Co.*, 123 Fed. Rep. 827.

Even if the state court had jurisdiction, there was no equity in the bill. It is not averred that appellee was without adequate remedy at law. In fact, appellee had a complete remedy at law for the recovery of the damages, if any, it had sustained by appellant's refusal to ship and deliver shipments of beer offered by it for shipment, consigned to persons at the local option points in Kentucky, whose licenses to sell intoxicating liquors had expired. It is not alleged by appellee that it had any other kind of customers in Kentucky besides those who were engaged in the sale of such liquors under licenses so to do.

The rule of the appellant not to accept, transport, or deliver intoxicating liquors consigned to points in Kentucky, where the sale of such liquor is prohibited by law, is reasonable and valid.

At common law a common carrier was not required to transport all commodities; he was only bound to carry the things which he was in the habit of carrying and which were within his profession as a common carrier. *Dickson* v. *Great Northern Ry. Co.*, 5 Eng. Ruling Cas. 358.

Assuming the Kentucky act of 1906, prohibiting the shipment of liquor into local option districts, to be invalid as to interstate shipments, a common carrier which has adopted a rule or regulation to conform to the law as written cannot be required by mandatory injunction to accept liquor offered for shipment from a point outside of Kentucky for local option points within that State. 5 A. & E. Ency. of Law, 2d ed., 162; 4 Elliott on Railroads, §§ 1465, 1466; Moore on Carriers, § 5, p. 98; Hutchinson on Carriers, §§ 144–147.

Where it treats all of a class alike, a railroad company

can make reasonable rules, and can refuse to accept goods for carriage; *Harp* v. *Choctaw &c. Ry. Co.*, 118 Fed. Rep. 169; *S. C.*, aff'd, 125 Fed. Rep. 445; *Int. Com. Comm.* v. *Cincinnati &c. Ry. Co.*, 167 U. S. 479; *Int. Com. Comm.* v. *Baltimore & Ohio Ry. Co.*, 43 Fed. Rep. 37; *S. C.*, aff'd, 145 U. S. 263; *Kansas Pacific R. R. Co.* v. *Nichols*, 9 Kansas, 243; *Johnson* v. *Midland Ry.*, 4 Exch. 367.

The question is whether the rule or regulation restricting the business is a reasonable one. The carrier cannot arbitrarily refuse to carry a certain kind of goods which it has every facility to carry, and the carriage of which will not endanger its property, or the lives, property, health or morals of others. It cannot be said that it is unreasonable for a carrier to adopt a rule that it will not ship liquor into districts in which the sale of liquor is prohibited by state law, and into which the legislature has declared that it shall be unlawful to ship liquor, although the statute prohibiting the shipment is invalid as to interstate shipments.

Carriers have some discretion, upon giving due notice, as to what they will carry, provided all persons are treated alike, without discrimination. The legislature cannot require the carrier to separate interstate passengers from intrastate passengers, but the carrier may make the separation if it elects to do so. *Hall* v. *DeCuir*, 95 U. S. 485. The carrier ought not to be required to take the risk of litigation and penalties. Under the statutes we are considering the carrier must, in order to be sure that it will escape the penalty, know that the goods have been ordered by some person in the State to which they are to be shipped, and if what purports to be an order is presented to the carrier, it takes some risk, unless it knows that the order is genuine. *American Express Co.* v. *Commonwealth*, 30 Ky. Law Rep. 207; *Crigler &c.* v. *Commonwealth*, 27 Ky. Law Rep. 921.

The risks are so great as to justify the carrier in making

a regulation, upon due notice, that it will not carry intoxicating liquors at all into any local option district, and that it will treat all shippers, both resident and nonresident, alike.

The legislature of Kentucky has legally determined, while dealing with a matter within its jurisdiction, that the shipment of liquor into the local option districts from any point is dangerous to the health, safety and good morals of the people of that district, and the carrier has a right to aid the people in avoiding that danger. It may refuse to carry high explosives because of the danger to life and property, although such explosives are essential to the conduct of useful business enterprises, but the theory upon which the statute in this case is based is that liquor is not only dangerous to life and property, but to the health and good morals of the people. See *Adams Express Co.* v. *Commonwealth*, 5 L. R. A. (N. S.) 630; *S. C.*, 92 S. W. Rep. 932, where the court said that an express company could not legitimately thrust the shadow of its greed between the people and their uplift.

See *Champion* v. *Ames*, 188 U. S. 321, upholding an act of Congress prohibiting the carriage of lottery tickets by express companies engaged in interstate commerce. See also *Austin* v. *Tennessee*, 179 U. S. 343.

One who sells goods to be delivered in another State may have the constitutional right to deliver them, but he has no constitutional right to have them delivered by a carrier who does not profess to carry that class of goods, but refuses to do so for anyone, after giving due notice to all. *Cook* v. *Marshall County*, 196 U. S. 261; *Mugler* v. *Kansas*, 123 U. S. 662; *State* v. *Goss*, 59 Vermont, 266.

A carrier may lawfully refuse to carry goods where such service will be exposed to peculiar and unusual danger, for instance, to the fury of a mob. *Pearson* v. *Duane*, 4 Wall. 605, 615.

Already Congress had made considerable progress in

providing restrictions upon the interstate transportation of intoxicating liquors by common carriers. See act of March 4, 1909, §§ 238–240; U. S. Comp. Stat., Supp. 1909.

The people of prohibition States and of localities in other States who have voted out or prohibited the sale of intoxicating liquors have long waited for an act of Congress positively prohibiting the transportation of such liquors from points without to points within such States and localities; and, in the absence of Federal legislation to that end, it is within the lawful powers of interstate carriers to establish reasonable regulations, such as this record shows appellant unselfishly adopted, foregoing the revenue to be derived from such traffic, after due notice to the public, whereby they will not transport or deliver such liquors to points in prohibition territory, no matter whether the same be interstate or intrastate traffic.

In Kentucky to-day there are ninety-six "dry" counties, and only twenty-three "wet" counties. See *Adams Express Co.* v. *Kentucky*, 206 U. S. 129; *Milwaukee Malt Extract Co.* v. *Chicago &c. Ry. Co.*, 73 Iowa, 98.

There is manifest and well-recognized difference between intoxicating liquors and all other kinds of merchandise. By the common consent of mankind the trade in intoxicants is regarded as dangerous and a menace to the public. Such liquor is an article which is in a class by itself, and it is made by the Wilson Act of 1890 subject to the will of the State, and so it is competent for the legislature to prohibit the sale of liquor in original packages by the consignee within the limits of the State, although it may have been shipped from a point without the State and thus have been the subject of interstate commerce. *Platt* v. *LeCocq*, 158 Fed. Rep. 723.

*Mr. George A. Cunningham* for appellee:

This suit does not arise under the Interstate Commerce

Act, nor does it arise under the Constitution and laws of the United States, and the appeal should be dismissed. *Empire State-Idaho M. & D. Co.* v. *Hanley,* 198 U. S. 292; *Arbuckle* v. *Blackburn,* 191 U. S. 405; *Spencer* v. *Duplan Silk Co.,* 191 U. S. 526; *Bonin* v. *Gulf Co.,* 198 U. S. 115; *Bankers'. Mutual Casualty Co.* v. *Railway.Co.,* 192 U. S. 371; *Cochran* v. *Montgomery County,* 199 U. S. 182, 260; *Chapman* v. *Brown,* 207 U. S. 88, 116; *Empire State-Idaho M. & D. Co.* v. *Hanley,* 205 U. S. 225; *Weir* v. *Rountree,* 216 U. S. 603; *St. L., K. C. & C. R. Co.* v. *Wabash Co.,* 217 U. S. 247; *Bagley* v. *General Fire Ex. Co.,* 212 U. S. 477.

This is not a case in which the remedies provided by the Interstate Commerce Act are exclusive. Those remedies are exclusive only when it is sought to enforce some provision of the act itself, and not when it is sought to enforce a right theretofore existing either at common law or by statute, unless the enforcement of such right is by the act committed to some other tribunal. *Central Stock Yards Co.* v. *L. & N. R. R. Co.,* 112 Fed. Rep. 823, and *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, do not apply, and see *Danciger* v. *Wells-Fargo & Co.,* 154 Fed. Rep. 379.

The state court had jurisdiction of the subject-matter and of the parties, so that it was authorized to issue a temporary restraining order.

Where a court has jurisdiction of the parties, especially in cases of injunction and specific performance, it will grant relief, even though the property to be affected is in another State. Even proceedings in the courts of one State may be enjoined by courts of another State where the latter have jurisdiction of the parties. 1 High on Injunctions, 4th ed., § 103; 6 Pomeroy's Eq. Jur., § 670; *Eingarter* v. *Illinois Steel Co.,* 59 Am. St. Rep. 859, note; *Hawkins* v. *Ireland,* 58 Am. St. Rep. 534, note; *Hayden* v. *Yale,* 40 Am. St. Rep. 232; and see *C., B. & Q. Ry. Co.*

v. *B. C. R. & N. Ry. Co. et al.*, 34 Fed. Rep. 481; Hutchinson on Carriers, 3d ed., § 149; *Bluthenthal* v. *Southern Ry. Co.*, 84 Fed. Rep. 920.

As to the right to mandatory injunction in cases of this kind, see Elliott on Railroads, 2d ed., § 1564, and authorities there cited. Mandatory injunction is the proper remedy to compel a carrier to accept shipments of intoxicating liquors which it refuses because of void state legislation. *Danciger* v. *Wells-Fargo & Co.*, *supra*; *Crescent Liquor Co.* v. *Platt*, 148 Fed. Rep. 897.

The appellant has the right to make any rule that it will not accept, transport, or deliver intoxicating liquors consigned to points in Kentucky where the sale of such liquor is prohibited by law.

As to the act of March 21, 1906, making it unlawful to bring or deliver any intoxicating liquor into any local option county or district of the State of Kentucky, and imposing penalties, the Court of Appeals of the State of Kentucky, in October, 1907, about six months after this answer was filed, held that act unconstitutional and void as to interstate shipments. *Cincinnati, N. O. & T. P. Ry. Co.* v. *Kentucky*, 104 S. W. Rep. 394; citing *Heyman* v. *Southern Ry. Co.*, 203 U. S. 270; *Rhodes* v. *Iowa*, 170 U. S. 412; *Lord* v. *Goodall*, 102 U. S. 541, holding that the transportation of intoxicating liquor from one State to another is interstate commerce and entirely beyond the control of the States.

Appellant admits in effect that it accepts and delivers beer to all places along its line other than local option districts. It is not the rule that it will not carry intoxicating liquors at all, and therefore does not bring itself within the reasoning of those decisions that concede to the carrier the right to determine within reasonable limitations what class of merchandise it will carry. Should the appellant adopt a general rule not to carry intoxicating liquors at all, a somewhat different question may be presented;

but even in such a case the courts would say that the rule
was unreasonable.

The Court of Appeals of Kentucky has, since this litiga-
tion was instituted, decided the main question involved
adversely to the appellant, holding that shipments of the
kind involved in this suit constitute interstate commerce
and are entirely beyond the control of the State. *Com-
monwealth* v. *McKinney*, 131 S. W. Rep. 497; *Adams Ex-
press Co.* v. *Kentucky*, 214 U. S. 218; *Kentucky* v. *Scott*,
133 S. W. Rep. 766.

The control of all interstate shipments is vested in
Congress, and no State may make any law limiting the
right of a citizen of one State to purchase any article of
commerce in any other State and to have the same shipped
to him wherever he may be without regard to the laws of
any State. *State* v. *Wignall*, 128 N. W. Rep. 935.

Notwithstanding any effects of intoxicating liquors,
beer is recognized as an article of interstate commerce and
is entitled to the protection of the law to the same extent
and under the same conditions as other commodities.
*Danciger* v. *Stone*, 187 Fed. Rep. 823; *S. C.*, 188 Fed. Rep.
510; *Barrett* v. *City of New York*, 183 Fed. Rep. 793.


Mr. Justice Lurton, after making the above statement,
delivered the opinion of the court.


1. The jurisdiction of this court to entertain an appeal
in this case cannot be seriously controverted. The juris-
diction of the Circuit Court was not dependent alone upon
diversity of citizenship. There was involved not only the
validity of the law of Kentucky as a regulation of inter-
state commerce, but a question as to whether the sole
remedy in any such case was not by an application to the
Interstate Commerce Commission.

2. The objection that there was an adequate remedy at
law, assuming that the subject is one for any tribunal other

than the Interstate Commerce Commission, comes too late, if ever available, the objection being now made for the first time, so far as is discoverable from the record. The announced purpose of the railroad company to abjure its function and duty as a common carrier in respect of interstate shipments of all intoxicating liquors to localities in the State of Kentucky, where the Kentucky local option prohibition laws prevailed, threatened the ruin of complainant's business, and relief by injunction against such a continued course of conduct was certainly one which in such circumstances might be granted. Where the case is one in which, under any circumstances, relief in equity may be admissible, it is too late to say that there was an adequate remedy at law only upon review proceedings. *Kilbourn* v. *Sunderland,* 130 U. S. 505.

3. The case was heard upon bill and answer. The defense is based solely upon the terms of the Kentucky act of March 21, 1906, now § 2569–a, Carroll's Kentucky Statutes of 1909, entitled an act "to regulate the carrying, moving, delivering, transferring or distribution of intoxicating liquors in local option districts." By that act it is made unlawful for any common carrier to transport beer or any intoxicating liquor to any consignee in any locality within the State where the sale of such liquors has been prohibited by vote of the people under the local option law of the State. A violation of the law subjects the offender to a fine of not less than fifty nor more than one hundred dollars for each offense.

Upon the assumption that this legislation effectively prohibited both state and interstate transportation of such commodities within the State, the railroad company notified all of its agents, in and out of the State, to refuse to receive such liquors when consigned to any local option point. This notification was by a printed circular letter, which set out the full text of the act, and gave a full list of all such local option points. In express terms this

notification applied to both inter- and intrastate ship-
ments; and, it is averred, this circular was filed with the
Interstate Commerce Commission. It is not, however,
averred that the Commission either took any action
thereon, or that it was asked to take any action.

The legality of the attitude of the railroad company
toward interstate shipments of intoxicating liquors to
local option points in Kentucky must turn upon the va-
lidity of that legislation as applied to interstate shipments.

By a long line of decisions, beginning even prior to
*Leisy* v. *Hardin*, 135 U. S. 100, it has been indisputably
determined:

a. That beer and other intoxicating liquors are a recog-
nized and legitimate subject of interstate commerce;

b. That it is not competent for any State to forbid any
common carrier to transport such articles from a con-
signor in one State to a consignee in another;

c. That until such transportation is concluded by deliv-
ery to the consignee, such commodities do not become sub-
ject to state regulation, restraining their sale or disposi-
tion.

The Wilson act, which subjects such liquors to state
regulation, although still in the original packages, does
not apply before actual delivery to such consignee where
the shipment is interstate. Some of the many later cases
in which these matters have been so determined and the
Wilson act construed are: *Rhodes* v. *Iowa*, 170 U. S. 412;
*Vance* v. *Vandercook Co.*, 170 U. S. 438; *Heyman* v. *South-
ern Railway*, 203 U. S. 270; *Adams Express Co.* v. *Ken-
tucky*, 214 U. S. 218.

Valid as the Kentucky legislation undoubtedly was as a
regulation in respect to intrastate shipments of such arti-
cles, it was most obviously never an effective enactment
in so far as it undertook to regulate interstate shipments
to dry points. Pending this very litigation, the Kentucky
Court of Appeals, upon the authority of the line of cases

above cited, reached the same conclusion.. *Cincinnati, N. O. & T. P. R. Co.* v. *Commonwealth,* 126 Kentucky, 563.

The obligation of the railroad company to conform to the requirements of the Kentucky law, so far as that law prohibited intrastate shipments, is clear, and to this extent its circular notification was commendable. But the duty of this company, as an interstate common carrier for hire, to receive for transportation to consignees upon its line in Kentucky from consignors in other States any commodity which is an ordinary subject of interstate commerce, and such transportation, could not be prohibited by any law of the State of such consignee, inasmuch as any such law would be an unlawful regulation of interstate commerce not authorized by the police power of the State. It is obvious, therefore, that in so far as the Kentucky statute was an illegal regulation of interstate commerce, it neither imposed an obligation to obey, nor affords an excuse for refusal to perform the general duty of the railroad company as a common carrier of freight.

The fact that the circular notice of the company referred to was filed with the Interstate Commerce Commission is incidentally stated in the answer of the company, and this fact is now made the basis for an argument that neither the state court nor the Circuit Court had any jurisdiction, and that an application should have been made to the Interstate Commerce Commission for an order requiring the railroad company to desist from refusing to transport such articles in interstate commerce.

Why should the brewing company have made complaint to the Commission. What relief could it afford? There was no tariff question. There was no discrimination against shipments tendered by complainant and like shipments tendered by other brewers to the same points. There was no claim that the commodities tendered were inherently dangerous to transport, or that the railroad company did not have transportation facilities. Evans-

ville was not discriminated against in favor of like shipments to the same points. To say that there was a discrimination between shipments of intoxicants and other commodities does not make a case of discrimination or preference where the denial of such shipments is based, as is the case here, wholly and solely upon an illegal restraint upon that kind of interstate commerce, is to reason in a circle, for the question comes back at last to the validity of the law forbidding such shipments. There was no discrimination if the law was valid, and the result must turn, not upon any administrative question or questions of fact within the scope of the power of the Commission, but upon the validity of the legislation which controlled the action of the carrier. That is a question of general law for a judicial tribunal, and one not competent for the Commission as a purely administrative body.

The decision in the case of *Texas & Pacific Railway* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, is not applicable here. The question there was one of the reasonableness of a rate. Such a question is primarily one of administrative character, and the propriety of a prior resort to the Commission to obtain a ruling upon the question of reasonableness involved the very heart of the whole statute. That there might be uniformity in rate-making necessarily required a resort to that body as a basis for a common law recovery of an excessive charge.

The result is that the decree of the court below must be

*Affirmed.*