VISCOSE CO. v. HINES, Director General of Railroads, et al.

(District Court, E. D. Pennsylvania. March 23, 1920.)

No. 2019.

COMMERCE ☞89—SUIT TO ENJOIN CANCELLATION OF CLASSIFICATION MAINTAIN-
ABLE WITHOUT RESORT TO INTERSTATE COMMERCE COMMISSION.

 Under Act Feb. 4, 1887, § 1, as amended (Comp. St. § 8563, subd. 4), as
to the duty of common carriers subject to that act, a suit may be main-
tained, without first resorting to the Interstate Commerce Commission, to
restrain carriers from putting into effect a supplement to their freight
classifications whereby the classification under which a commodity has
been carried for years is canceled, and the commodity is included among
articles not accepted for transportation, as no question of reasonableness
of classifications, etc., is involved.

In Equity. Suit by the Viscose Company against Walker D. Hines,
Director General of Railroads, and others. On hearing on motion for
preliminary injunction. Preliminary injunction granted.

Harold S. Shertz, of Philadelphia, Pa., for plaintiff.

F. M. Rivinus and Theodore W. Reath, both of Philadelphia, Pa.,
for defendant Norfolk & W. Ry. Co.

Charles Meyers, Henry Wolf Bikle, and John Hampton Barnes, all of
Philadelphia, Pa., for defendant Pennsylvania R. Co.

THOMPSON, District Judge. From the bill and moving affidavits
it appears that the plaintiff, the Viscose Company, is a corporation of
Pennsylvania, engaged at Marcus Hook, Pa., and Roanoke, Va., in the
manufacture and sale of artificial or fiber silk. At its plant at Marcus
Hook it began its business in 1910. Its product is used in the manu-
facture of hosiery, neckties, underwear, and rugs, and is sold to man-
ufacturers of these commodities in interstate commerce in various
parts of the United States. It employs at its Marcus Hook plant about
3,500 persons, at its Roanoke plant 1,800, and has under construction
and expects to have completed within a year a plant at Lewistown,
Pa., at a cost of about $3,000,000, where it will require the services of
from 2,000 to 2,500 employés. At its Marcus Hook plant it is pro-
ducing about 9,000,000 pounds, and at its Roanoke plant about 2,-
000,000 pounds, of artificial silk per year, and its total production, when
the Lewistown plant is completed, will be about 17,000,000 pounds a
year.

It is necessary for the plaintiff to transport about 80 per cent. of its
product by railroad, and since the commencement of its business the
carriers by rail, including the defendants, have accepted and carried
the product, participating in the various freight classifications contain-
ing descriptions and ratings for the transportation of silk, such as man-
ufactured by the plaintiff, and upon which rates were based and pub-
lished by the various railroads, including the carriers defendant, in their
freight tariffs. During the period of federal control the railroads op-
erating under the Director General, under freight classifications and tar-
iffs published and filed, have continued to accept and carry the plain-

tiff's product under such classifications, tariffs, and rates. On December 10, 1919, the Director General of Railroads published and issued a tariff, known as "Consolidated Freight Classification No. 1," which became effective December 30, 1919, and was participated in by the defendant carriers. This classification, at page 363, items 31, 32, 33, and 34, contains descriptions and ratings covering artificial silk, such as manufactured by the plaintiff, and under the same the defendant carriers up to February 29, 1920, accepted all such artificial silk for transportation from the plaintiff's plants in interstate commerce.

By "Supplement No. 2" to "Consolidated Freight Classification No. 1," dated January 28, 1920, and under "Freight Rate Authority No. 21474," issued by the Director General and participated in by the defendant carriers, and published and filed with the Interstate Commerce Commission, the descriptions and ratings in "Consolidated Freight Classification No. 1" were amended, so as to cancel the ratings on silk provided for in items 32, 33, and 34, page 363, and to amend rule 3 of said Classification to include the same articles in the list of commodities that would not be accepted for shipment. Rule 3, which was amended by including artificial silk, such as manufactured by the plaintiff, is as follows:

"Rule 3. Unless otherwise provided, the following property will not be accepted for shipment nor as premiums accompanying other articles:

"Bank bills, coin or currency, deeds, drafts, notes, or valuable papers of any kind; jewelry; postage stamps or articles with postage stamps affixed; precious metals or articles manufactured therefrom; precious stones; revenue stamps; or other articles of extraordinary value." — Property of extraordinary value not accepted.

Cancellation of the classification of silk under items 31, 32, 33, and 34 of the Freight Classification was to be effective on and after February 29, 1920. It appearing that irreparable injury would result to the plaintiff, a temporary restraining order was issued February 26, 1920, restraining the defendants from putting into effect and enforcing the amendment canceling the ratings on artificial silk, and including artificial or fiber silk in the list of commodities that would not be accepted for shipment on and after February 29, 1920, and the defendant carriers were enjoined from refusing to accept from the plaintiff artificial or fiber silk for transportation in interstate commerce.

Counsel for the defendants at the argument denied the jurisdiction of the court to entertain the bill, or to issue a restraining order or injunction, upon the ground that, in order to do so, the court will be obliged to determine the reasonableness of classification rules or regulations which affect or determine the rates or the value of the service rendered, which the court is precluded from doing, because these questions of reasonableness are administrative questions, exclusively for the Interstate Commerce Commission as the tribunal of first instance.

The duties of the carrier arise under the common law and under the acts of Congress to regulate commerce. Section 1 of the act of February 4, 1887, as amended (Comp. St. § 8563, subd. 4), makes it the duty of all common carriers subject to the provisions of the act—

"to establish, observe, and enforce just and reasonable classifications of property for transportation, with reference to which rates, tariffs, regulations, or practices are or may be made or prescribed, and just and reasonable regulations and practices affecting classifications, rates, or tariffs, * * * and all other matters relating to or connected with the receiving, handling, transporting, storing, and delivery of property subject to the provisions of this act which may be necessary or proper to secure the safe and prompt receipt, handling, transportation, and delivery of property subject to the provisions of this act upon just and reasonable terms, and every such unjust and unreasonable classification, regulation, and practice with reference to commerce between the states and with foreign countries is prohibited and declared to be unlawful."

The cancellation of the classification under which the plaintiff's commodity has been carried and rated is contended by the defendants to be a classification, regulation, and practice, the reasonableness of which is in dispute, and which therefore is subject to the primary action of the Interstate Commerce Commission.

An examination of the facts makes it apparent that what the defendants have done is not to establish a classification of the plaintiff's property for transportation with reference to which rates may be prescribed, nor has it done anything required by the act relating to or connected with the receiving, handling, transporting, storing, or delivery of the plaintiff's property. Prior to January 28, 1920, the defendants complied with the requirements of the act by having on file schedules of classification and rates for the transportation of the plaintiff's product, but on that date they withdrew the plaintiff's product from classification, so that, so far as it was concerned, there was no longer established for it any classification for transportation with reference to which rates might be prescribed. The plaintiff's product is not classified. It is excluded from classification. It is not the subject of a tariff rate. It is excluded from transportation, and no questions of just and reasonable rates, charges, classifications, regulations, or practices connected with transportation arise. The result of putting into effect the cancellation order is to deprive the plaintiff of its rights as a manufacturer and seller to ship and transport its commodity, a right which it has exercised without question since 1910.

If a carrier may, after, without question, having accepted a commodity for transportation for such a period, after a manufacturing plant has been located upon its line, after the business has grown and prospered, after, in reliance upon continuing to obtain transportation, large expenditures have been made for the building of housing for its workers, exclude it absolutely from transportation, it involves confiscation, rather than classification. But the defendants contend that they may do this, and that only the determination by the Interstate Commerce Commission that it is unjust and unreasonable will prevent the plaintiff having its transportation rights taken away from it. How can there be any question for the commission to decide? Can the commission say it is a just and reasonable regulation which deprives the plaintiff of the right of transportation of its property?

If the commission has power to pass upon the question, that power must appear somewhere in the acts of Congress. There is no question here of reasonableness of rates, nor of classification affecting rates.

nor of discrimination, nor of undue preference or advantage, nor of the construction of tariffs. All of such questions are committed to the commission under the policy requiring uniformity of decision upon these matters. What the defendant has done is the same thing that is denominated in Louisville & Nashville Railroad Co. v. Cook Brewing Co., 223 U. S. 70, 32 Sup. Ct. 189, 56 L. Ed. 355, as the announced purpose of the railroad company to abjure its function and duty as a common carrier in respect of interstate shipments, which threatened the ruin of complainant's business, and relief by injunction against such a continued course of conduct was held to be one which in such circumstances might be granted.

If a carrier may, through the filing of notice, or through cancellation of a classification, or through inclusion of one commodity among articles not accepted for transportation, exclude that commodity from transportation, it may by like means exclude from transportation any other commodity which has become an established subject of interstate commerce, to the ruin and destruction of the established business of any shipper. And if the railroad company may not justify its exclusion through obedience to a state law, as in Louisville & Nashville Railroad Co. v. Cook Brewing Co., supra, how can it justify it by its own voluntary act?

As the question in this case only involves the right of the railroad to exclude from transportation a commodity which has for years been accepted and recognized by the defendants as proper for transportation, and is not included within the powers conferred upon the Interstate Commerce Commission to hear and determine in the first instance, it is held that the court has jurisdiction, and primary resort to the Interstate Commerce Commission is not necessary. The question of jurisdiction over the Director General of Railroads is, I think, decided affirmatively in the case of Northern Pacific Railway Co. and Walker D. Hines, as Director General of Railroads v. State of North Dakota, reported in 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897, No. 976, decided June 2, 1919; but, in view of the provisions of the act approved February 28, 1920, terminating federal control of railroads on March 1st, the question seems to be immaterial.

A preliminary injunction will issue.