**CHENEY BROS. et al. v. HINES, Director General of Railroads, et al.**

(Circuit Court of Appeals, Second Circuit. March 29, 1920. On Motion for Rehearing April 9, 1920.)

No. 233.

Railroads ⊚�longrightarrow5½, New, vol. 6A Key-No. Series—Right to refuse to accept commodity for carriage judicial question.

 Legality of order of Director General of Railroads effective February 29, 1920, entitled "Freight Rate Authority No. 21474 Corrected," and amending Consolidated Freight Classification by canceling ratings on silk and placing silk in the list of commodities that will not be accepted for carriage, *held* to present a judicial question, and complainants, manufacturers of silk, *held* entitled to a preliminary injunction restraining enforcement of such order.

 Hough, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Cheney Bros. and others against Walker D. Hines, Director General of Railroads, and others. From an order denying a preliminary injunction, complainants appeal. Reversed.

Walter Gordon Merritt, of New York City (John M. P. Thatcher and Austin, McLanahan & Merritt, all of New York City, of counsel), for appellants.

Alexander H. Elder, of Washington, D. C. (Douglas Swift, R. W. Barrett, Henry Wolf Bikle, Parker McCollester, C. M. Sheafe, Jr., Ray Rood Allen, and M. B. Pierce, all of New York City, and Theodore W. Reath, of Philadelphia, Pa., of counsel), for appellees.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. Cheney Bros., a corporation of the state of Connecticut, and a number of other corporations, firms, and individuals engaged in the business of buying, selling, and manufacturing raw silk, artificial silk, thrown silk, and spun silk, filed a bill in equity on behalf of themselves and all others similarly interested against Walker D. Hines, Director General of Railroads, on behalf of the government, a number of railroad companies engaged in interstate commerce, and three individual defendants, Collyer, Crossland, and Fyfe, agents of all the railroad companies, to restrain them from publishing and putting into effect orders authorized by the defendant Hines, praying:

"(1) That the defendants, * * * and all railroads operating under the consolidated freight classification and federal control, their and each of their agents, servants, attorneys, and all persons acting by or under their authority, suggestion, or direction, be restrained and enjoined from putting into effect or operation 'Freight Rate Authority No. 21474 Corrected' and the freight classification issued in accordance therewith, and from refusing to transport raw silk, artificial silk, spun silk, or thrown silk, and from refusing to transport such silk at the rates provided in the Consolidated Classification just prior to the issuance of said Freight Rate Authority, until such rates are hereafter changed by proper authority."

Under Transportation Act Feb. 28, 1920, § 200 (a), federal control of the railroads ended March 1, 1920, and under section 208 (a) all rates, fares, and classifications in effect February 29th continued in force and effect until changed by state or federal authority or pursuant to authority in law. The defendant Hines issued an order, termed "Freight Rate Authority No. 21474 Corrected," effective February 29, 1920, amending Consolidated Freight Classification No. 1, as follows:

"This will authorize, effective on thirty days' notice, amendment to Consolidated Freight Classification No. 1, to cancel the ratings on silk provided for in items 32, 33, and 34, page 363, and to amend rule 3 of said Classification to include the same articles in the list of commodities that will not be accepted for shipment."

The defendants Collyer, Crossland, and Fyfe have published and put into effect the said order.

The District Judge declined to issue a preliminary injunction, upon the ground that he had no authority to do so.

Section 10 of the Act of March 21, 1918, entitled "An act to provide

for the operation of transportation systems while under federal control, for the just compensation of their owners, and for other purposes" (40 Stat. 451 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j]), provides:

"Carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. * * *

"During the period of federal control, whenever in his opinion the public interest requires, the President may initiate rates, fares, charges, classifications, regulations, and practices by filing the same with the Interstate Commerce Commission, which said rates, fares, charges, classifications, regulations, and practices shall not be suspended by the commission pending final determination.

"Said rates, fares, charges, classifications, regulations, and practices shall be reasonable and just and shall take effect at such time and upon such notice as he may direct, but the Interstate Commerce Commission shall, upon complaint, enter upon a hearing concerning the justness and reasonableness of so much of any order of the President as establishes or changes any rate, fare, charge, classification, regulation or practice of any carrier under federal control, and may consider all the facts and circumstances existing at the time of the making of the same. In determining any question concerning any such rates, fares, charges, classifications, regulations, or practices or changes therein, the Interstate Commerce Commission shall give due consideration to the fact that the transportation systems are being operated under a unified and coordinated national control and not in competition.

"After full hearing the commission may make such findings and orders as are authorized by the act to regulate commerce as amended, and said findings and orders shall be enforced as provided in said act: Provided, however, that when the President shall find and certify to the Interstate Commerce Commission that in order to defray the expenses of federal control and operation fairly chargeable to railway operating expenses, and also to pay railway tax accruals other than war taxes, net rents for joint facilities and equipment, and compensation to the carriers, operating as a unit, it is necessary to increase the railway operating revenues, the Interstate Commerce Commission in determining the justness and reasonableness of any rate, fare, charge, classification, regulation, or practice shall take into consideration said finding and certificate by the President, together with such recommendations as he may make."

It will be seen from the above that the powers of the Director General are the same as those of the carriers, except that rates fixed by him are to be treated with a little more ceremony than the rates fixed by the carriers. For the purposes of this case the powers are the same. What is complained of is not a question of rates, fares, charges, classifications, regulations, or practices, or changes therein, which would be an administrative subject within the cognizance of the Interstate Commerce Commission, but is, not merely a temporary embargo, but a permanent prohibition of the carriage of silk at all, which is, we think, a judicial question, clearly within the cognizance of the courts.

It is the elemental duty of the common carriers to accept and carry all goods usually carried. Silk is a form of merchandise which has been carried by the companies for many years. The output of the mills in 1919 in this country is said to have exceeded in value $600,-000,000, and the plaintiffs, if refused transportation, will suffer irreparable injury. The refusal of the defendant Hines had no connec-

tion with his war powers, but was founded solely on the value of silk and the danger of loss by the carriers through theft. This would be a reason for fixing a rate of freight proportional to the value of the silk and to the risk of the carriers, but is no better reason for an absolute prohibition than would exist in the case of wheat or coal or any other goods.

Defendants contend that the order is an administrative act, the reasonableness of which is for the Interstate Commerce Commission in the first instance, and they see some support for the prohibition in the provisions of section 4281, Rev. Stat. (Comp. St. § 8019), but we do not. It enumerates certain articles, like precious metals, stones, securities, "silks in a manufactured or unmanufactured state," which, if laden as baggage or freight on a vessel, their value and character must be stated in writing and entered on the bill of lading, in default of which the "master or owner of the vessel shall not be liable as carriers thereof in any form or manner." Far from authorizing the vessel owners to refuse to carry such goods, as the railroads are doing, the section seeks only to protect them against imposition, and to give them an opportunity to exercise more than usual care in respect of unusually valuable freight.

As it is the wish of the parties to lose no time in reaching a final determination, it will be enough for us to say that we are quite satisfied that a judicial question is presented for our cognizance, and that a preliminary injunction should issue as prayed for. A similar conclusion has been reached in an opinion just handed down in the District Court for the Eastern District of Pennsylvania, Viscose Co. v. Hines et al., 263 Fed. 726.

Order reversed.

HOUGH, Circuit Judge, dissents.

### On Motion for Rehearing.

PER CURIAM. The fact that nothing was said in our opinion about express companies, or carriage of silk by express or by automobile, is not to be taken as evidence that we overlooked these considerations. The question before us was the right of the Director General, or of the railroad carriers, to refuse to carry silk as freight. The thing principally complained of was the amendment of rule 3 to include silk. The cancellation of the ratings was incidental. If the amendment is invalid, the cancellation of the rates is invalid, and the existing rates continue.

This suit is a class or representative suit, both as to the plaintiffs and as to the defendants. We think the injury to the plaintiffs more entitled to consideration than the possible embarrassments to the business of the carriers that are suggested. It is unreasonable to ask us to affirm an order which we think, and have decided, should be reversed. So a certificate to the Supreme Court for instructions does not lie in the case of interlocutory orders, even if we were disposed to grant it. Sections 128 and 239, Judicial Code (Comp. St. §§ 1215, 1216).

Motion denied.