## QUANAH, A. & P. RY. CO. v. PANHANDLE & S. F. RY. CO.

### No. 7157.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1933.

Rehearing Denied Jan. 13, 1934.

G. E. Hamilton, of Matador, Tex., and William E. Allen, of Fort Worth, Tex., for appellant.

G. B. Ross, of Galveston, Tex., and H. L. Adkins and H. C. Pipkin, both of Amarillo, Tex., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant sought to enjoin the appellee from revoking in part a through interstate route and joint rate on which for five years cotton-seed products had been carried over appellant's line of railroad. On June 1, 1933, the appellee filed notice under section 6 (3) of the Interstate Commerce Act (49 USCA § 6 (3) of the proposed change, and named July 15, 1933, as the date on which the change would go into effect. On June 16, 1933, the Emergency Railroad Transportation Act went into effect (49 USCA § 250 et seq.). Section 4 thereof (49 USCA § 254) reads in part: "The purposes of this chapter are (1) to encourage and promote or require action on the part of the carriers and of subsidiaries subject to the Interstate Commerce Act as amended [chapter 1 of this title] which will (a) avoid unnecessary duplication of services and facilities of whatsoever nature and permit the joint use of terminals and trackage incident thereto or requisite to such joint use: Provided, That no routes now existing shall be eliminated except with the consent of all participating lines or upon order of the Coordinator." Thereupon appellant, alleging that it had not consented to the elimination of this route, and that the co-ordinator had not ordered it, and contending that the quoted proviso prohibited the appellee from carrying out its proposed revocation thereof, obtained on July 14, 1933, a temporary restraining order. Later a motion to revoke this order and to dismiss the bill was sustained, mainly on the grounds that the appellant was estopped by a former judgment that the proviso was addressed to action by the regional committees set up by the act and not to action by the carriers, and that in any case the question was one for the Interstate Commerce Commission and not in the first instance for the courts. This appeal followed.

■ The contention of estoppel by judgment arises out of a proceeding between the same parties to restrain the revocation of a similar joint route and rate for other products filed May 15, 1933, and dismissed May 31, 1933, on the ground that the matter was within the exclusive jurisdiction of the Commission. That bill did not present, and could not have presented, any question based on the Emergency Railway Transportation Act, for it became law more than two weeks after the judgment. The case then alleged was that the rate changes proposed would create unreasonable preferences and an unlawful discrimination against complainant and against persons and localities served by complainant in violation of section 3 (1) and (3) of the Commerce Act, 49 USCA § 3 (1, 3). Very properly the court held such questions to be primarily for the Commission. The present bill relates to a subsequently filed notice to cancel a joint rate and route applying to another commodity which is plainly a new cause of action; and the question made is not at all the propriety of the old or of the changed rate and route in themselves considered, but is whether the carrier under the new law can cancel an existing route without the consent of all the participating lines or an order of the newly created co-ordinator. There is in the former judgment no estoppel touching this question. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Auto Acetylene Light Co. v. Prest-O-Lite Co. (C. C. A.) 264 F. 810, 811; Steele County v. Erskine (C. C. A.) 98 F. 215.

■■ Title 1 of the new act is temporary and experimental. Section 17 (49 USCA § 267). It establishes a co-ordinator with large powers and directs him to divide the carrier lines of the country into three groups, each represented by a regional committee. Section 3 (49 USCA § 253). The duties of the committee are fixed in section 5 (49 USCA § 255). Each in general is for its group to "carry out the purposes set forth in subdivision 1 of section 4 [subdivision (1) of section 254], so far as such action can be voluntarily accomplished by the carriers," and, where voluntary action fails, it is to make recommendations to the co-ordinator, who can issue orders which are subject to review by the Commission. Section 9 (49 USCA § 259). We reject the view that the proviso in section 4 (1), 49 USCA § 254 (1) above quoted is intended to forbid action only by the regional committees. If it were so intended, the proviso would have been placed in section 5 (49 USCA § 255), where their powers and duties are defined. If restricted to them, the

proviso is manifestly redundant, for they are given no power to do anything except by the voluntary action of the carriers or the order of the co-ordinator. We think its general language clearly includes the carriers in its prohibition against eliminating existing routes unless by consent of all participating lines or by order of the co-ordinator. It immediately follows a mention, not of the committees, but of the carriers: "(1) To encourage and promote or require action on the part of the carriers: * * * Provided, That no routes now existing shall be eliminated," etc. Routes could formerly have been eliminated either by the action of a carrier under Commerce Act § 6 (3), 49 USCA § 6 (3), or by action of the Commission under section 15 (3) and (7), (49 USCA § 15 (3, 7). Since amendments of the Commerce Act are dealt with separately in title 2 of the new act, and since all action by the co-ordinator is reviewable before the Commission, it may be that the powers of the Commission itself were not intended to be altered by the proviso under discussion, but that question is not now for decision. We think it clear that by the proviso the Congress in the exercise of its plenary power over interstate commerce did intend to adopt as proper to be maintained all the interstate routes which at the passage of the act had been lawfully established, and to prohibit their elimination by a carrier acting under section 6 (3) of the Commerce Act, unless all the participating carriers should consent or the co-ordinator should order it. The stability of existing routes thus to be secured might be of great aid to the co-ordinator and a much-needed safeguard to the traffic of the shorter lines during the adjustments contemplated by the new act. We are referred to some expressions of individual legislators in urging the adoption of the proviso as indicating that they thought it applied to the committees. Such expressions are no safe guide to the true meaning of a statute. Duplex Printing Press Co. v. Deering, 254 U. S. 443, 474, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196. The Congress evidently intended an effective prohibition, and that could not be secured by addressing it to a committee which had no power to do the prohibited thing while allowing it to be freely done by a carrier in pursuit of its own selfish ends. The proviso, so long as it is in force, must be taken as a modification of section 6 (3).

■ This case falls within the proviso, although the notice of the intended elimination of the route was filed before the act became law. Under Commerce Act § 6 (3), 49 US

CA § 6 (3), a change is not accomplished by filing the notice, but is made "after thirty days' notice to the commission and to the public published as aforesaid, which shall plainly state the changes proposed to be made in the schedule then in force and the time when the changed rates, fares, or charges will go into effect." The date so fixed was July 15th. On June 16th, when the new act became law, the joint route in controversy was still in force and a "route now existing," and could not be eliminated unless by consent of all participating lines or by an order of the co-ordinator.

The question whether the old route or the proposed change shall now govern is one for the courts and not exclusively for the Commission. There is in this suit no issue of reasonableness, discrimination, or the like, no effort either to establish or abolish a rate or a route. There is only a question of law as to whether under the proper construction of a statute a route already duly established has been lawfully abolished, a question appropriate to a court. Texas & Pacific Ry. Co. v. Gulf, Colorado & Santa Fe Ry. Co., 270 U. S. 266, 46 S. Ct. 263, 70 L. Ed. 578; Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943; Louisville & Nashville R. R. Co. v. F. W. Cook Brewing Co., 223 U. S. 70, 32 S. Ct. 189, 56 L. Ed. 355; American Ry. Express Co. v. Price (C. C. A.) 54 F.(2d) 67. On the admitted facts we hold that the old route remains established, and appellant is entitled to have it regarded, so that shippers who wish may route their goods accordingly, and so that appellant may receive its proper share of the traffic involved. The legal remedy by damages for a denial of this right is inadequate because of the difficulty in establishing the loss. Moreover, a multiplicity of suits would probably be necessary for full relief. We esteem it a case in which a court of equity may properly act by injunction. The case has not become moot, as has been suggested, on account of the passing of July 15, 1933, the date which the notice of change named. We are holding that, by the passage of the act of June 16, 1933, the pending notice became of no effect, and the change proposed by it did not take place because the act prohibited it. The appellant is as much entitled to relief after July 15th as before. The bill ought not to have been dismissed.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.