## MOOR v. TEXAS & N. O. R. CO.

### No. 7629.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1935.

Thornton Hardie, of El Paso, Tex., for appellant.

Maury Kemp and M. Nagle, both of El Paso, Tex., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

**WALKER, Circuit Judge.**

By bill in equity the appellant prayed that the appellee, Texas & New Orleans Railroad Company, be enjoined from refusing the shipment of cotton bales tendered, as alleged in the bill, by appellant to appellee for shipment in interstate commerce, and for a mandatory injunction directing the appellee to accept the sums alleged to have been tendered and the shipments of cotton which may hereafter be tendered of the same character as those referred to in the bill, and that appellee be required to transport such cotton bales in interstate commerce from Clint, Tex., to New Orleans, La. The bill was filed on October 23, 1934, and, as it was amended, contained allegations to the following effect: Appellant is the owner of more than 3,500 acres of land in El Paso county, Tex., adjacent to Clint, Tex., which is situated on the railroad line of the appellee, which operates a line of railroad from Clint, Tex., to the Texas-Louisiana boundary, where it connects with other lines of railroad, which, in connection with appellee's line, transport goods, wares, and merchandise in interstate commerce from Clint, Tex., to New Orleans, La., and at that station appellee regularly receives articles of freight, including bales of cotton, for shipment in interstate commerce to New Orleans, La., at a regular rate or tariff, duly adopted, and approved by the Interstate Commerce Commission of the United States of America. The amount of cotton raised on said land during the year 1934 is sufficient to produce a total of approximately 2,500 bales of lint cotton of the average weight of 500 pounds. Appellant has already ginned 1,833 bales of lint cotton. Appellant has obtained tax exemption certificates, provided for by section 6 of the Act of Congress, approved April 21, 1934, 48 Stat. 601, known as the Bankhead Act (7 USCA § 706), for 855½ bales of cotton. Those tax exemption certificates were obtained after the appellant had made a written application, dated August 17, 1934, for tax exemption certificates and allotment under the terms of said act, and regulations thereunder. That application contained the following provision: "In making this application the operator agrees to comply (1) with the terms of the act and (2) with such regulations as have been heretofore or may hereafter be prescribed by the Secretary relating to the administration of the act and also (3) with such conditions and limitations on the production of agricultural commodities by the operator as the Secretary may, from time to time, prescribe to assure the cooperation of such operator in the reduction programs of the Agricultural Adjustment Administration and to prevent the expan-

sion on lands leased by the Government of competitive production of agricultural commodities other than cotton." By his financial necessities, and in order to obtain cotton bale tags, appellant was compelled to sign that application, "but Plaintiff received no consideration for signing said instrument, and signed the same under compulsion and duress, as above set forth." On October 18, 1934, appellant tendered to appellee 10 bales of cotton without any bale tags attached thereto, for shipment in interstate commerce over lines of railroad of appellee, and connecting carriers, from El Paso, Tex., to the city of New York, and on the same date tendered to appellee at Clint, Tex., 10 bales of cotton, which had no bale tags attached thereto, for shipment in interstate commerce from Clint, Tex., to New Orleans, La. When each of those tenders was made, appellant tendered to appellee payment in cash of the freight charges applicable to such shipment, and tendered full and complete performance of all requirements fixed by the tariff, and approved by the Interstate Commerce Commission, applicable to such a shipment. Appellee refused to accept said shipments, and refused to transport said cotton in interstate commerce between said points solely because of the fact that the tendered bales of cotton had no bale tags attached to them as provided by the above-mentioned act, and because of the penal provisions contained in that act. Appellant's cotton heretofore tendered and which he intends to tender to appellee was and is to be shipped by appellant to New Orleans, La., and thence to Liverpool, England, for sale there, and said cotton is ordinary short staple cotton. The concluding paragraph of the original bill follows: "Plaintiff has no adequate remedy at law, and to secure the measure of relief afforded by suits for damages Plaintiff would be required to file a large number of suits based upon the several acts of the Railroad Companies in refusing to accept shipments, and Plaintiff can only secure an adequate remedy and avoid a multiplicity of suits by obtaining equitable relief of the character sought in this proceeding." The appellee filed an answer to the bill as it was amended, and also a motion to dismiss it, on the ground, among others, that appellant has a plain, adequate remedy at law. On the submission of the cause on the pleadings, including the motion to dismiss, and the evidence, the court on November 5, 1934, after making findings to the effect that the evidence did not show that appellant had exhausted all legal remedies, or that appellant will, by reason of the matters alleged in his bill of complaint, suffer irreparable injury and damage for which he had no adequate remedy at law, rendered a decree dismissing the cause.

In behalf of the appellant it was contended that, by reason of the constitutional invalidity of the above-mentioned act, the ground on which appellee refused to accept for shipment in interstate commerce untagged bales of cotton tendered and expected to be tendered constitutes no excuse or justification for such refusal, and that appellee's action with reference to such cotton was without any legal justification or excuse. If appellee's action in refusing to accept such cotton for transportation in interstate commerce was wholly wrongful, the appellant was not entitled to maintain this suit in equity without showing that no adequate legal remedy for the redress of such wrong was available to him. In our opinion, such showing was not made by either pleading or evidence. For a wrongful refusal by the appellee to accept and transport lawful goods duly tendered by the appellant, the latter had his action at law for damages resulting to him from that wrong. New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 382, 12 L. Ed. 465; York Co. v. Illinois Central Railroad, 3 Wall. 107, 18 L. Ed. 170. In the absence of any allegation as to the solvency or insolvency of the appellee, it is presumed to be solvent and subject to be coerced into paying damages adjudged against it in favor of appellant. At the time this suit was brought, the only statute forbidding the transportation, except for storage or warehousing, of bales of cotton to which prescribed tags were not attached, applied only to bales of cotton grown in the year 1934. Section 2 of the Act, 48 Stat. 599 (7 USCA § 702). There were no allegations or evidence of facts supporting the conclusion that appellant would be required to file a large number of suits based on many refusals by appellee to accept for shipment untagged bales of cotton. So far as appears, the number of suits at law required to be brought by appellant because of appellee's refusal to accept for shipment untagged bales of cotton is wholly under the control of the appellant. At the time this suit was brought, 1,833 bales of cotton grown on appellant's land in 1934 already had been ginned, and it reasonably may be supposed that the remainder of the cotton grown on that land in 1934 would or could be ginned and made ready

for shipment within a brief period. At that time, upon appellee wrongfully refusing to accept for transportation in interstate commerce all or any part of appellant's already ginned, but untagged, 978 bales of cotton, after being advised of appellant's desire and readiness to make such shipment and to pay established charges of transportation, appellant could sue appellee at law to recover damages resulting from such wrongful refusal. The judgment in that suit would determine finally every question in dispute between the parties. There would be no need of any other suit except such as the appellant will be able to bring within a short time. The appellant was not in the position of one having a continuous right or occasion to make shipments of untagged bales of cotton. The right asserted by the appellant was to have a defined, limited number of untagged bales of cotton grown in the year 1934 transported in interstate commerce by the appellee. It was not made to appear that a multiplicity of suits was required to enforce that right. The jurisdiction of a court of equity for the prevention of a multiplicity of suits does not come into play unless the exercise of it is clearly necessary to protect the plaintiff from continued and vexatious litigation. That jurisdiction is not properly invoked by a plaintiff who is in a position to avoid continued and vexatious litigation for the enforcement of his asserted rights; the only multiplicity of suits apprehended or contemplated consisting in an unnecessary repetition of suits by the plaintiff himself against the same defendant for causes of action arising out of substantially similar facts and the same legal principles. Boise Artesian Water Co. v. Boise City, 213 U. S. 276, 286, 29 S. Ct. 426, 53 L. Ed. 796; Matthews v. Rodgers, 284 U. S. 521, 529, 52 S. Ct. 217, 76 L. Ed. 447; Gulf Compress Co. v. Harris, 158 Ala. 343, 48 So. 477, 24 L. R. A. (N. S.) 399; Burroughs v. Cutter, 98 Me. 178, 56 A. 649, 99 Am. St. Rep. 392; 10 R. C. L. 281.

We are of opinion that the decree under review is sustainable on one or more other grounds mentioned below.

██ The challenge of a statute on the ground of unconstitutionality is not sustainable unless the case is so clear as to be free from doubt. Von Hoffman v. City of Quincy, 4 Wall. 536, 549, 18 L. Ed. 403; Eubank v. Richmond, 226 U. S. 137, 143, 33 S. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192; Fairbank v. United States, 181 U. S. 283, 21 S. Ct. 648, 45 L.

Ed. 862; 6 R. C. L. 75. The constitutionality of the Bankhead Act is challenged in this case only in so far as its provisions purport to affect the transportation of cotton bales in interstate commerce. The provisions of the act having a bearing on that subject are those imposing a tax on cotton other than such as is exempted, and forbidding the transportation, except for specified storage or warehousing, beyond the boundaries of the county where produced of any lint cotton to which a prescribed bale tag is not attached, sections 4, 10, and 14 (b) of the act, 48 Stat. 559, 603, 604 (7 USCA §§ 704, 710, 714 (b) ; the tax being levied on cotton in excess of prescribed amounts thereof produced in the year 1934 on lands planted in cotton in that year. Those provisions are means of restricting the amount of cotton grown in the year 1934 which is transported in interstate commerce. If constitutionally valid, they have the effect of making the attaching of the prescribed tag, evidencing the tax paid or tax exempt character of the cotton bale to which it is attached, a prerequisite to the existence of a right to transport in interstate commerce bales of cotton grown in the year 1934. In view of the broad power to regulate commerce among the several states, conferred by section 8 of article 1, cl. 3 of the Constitution, to say the least, it is not clear beyond reasonable doubt that it was beyond the power of Congress to limit or restrict the right of transporting in interstate commerce cotton grown in the year 1934, to such parts thereof as are either exempt from the prescribed tax or on which that tax has been paid, and are in bales to each of which is attached a required tag evidencing the tax exempt or tax paid character of the cotton contained therein. If provisions of the act are valid in so far as they have the effect of making the attaching of a prescribed tag a prerequisite to the existence of a right to transport in interstate commerce baled cotton, it is not material in this case that other provisions or features of the act are invalid. Section 21 of the Act, 48 Stat. 606 (7 USCA § 721).

██ It appears from the allegations of appellant's bill that he availed himself of the provisions of the Bankhead Act in order to obtain required bale tags for the part of his cotton grown in 1934 which was exempt from the prescribed tax, and in doing so agreed in writing to comply with the terms of the act, and with prescribed conditions and limitations on his production of agricultural commodities. No facts alleged or

390

proved showed that the making of that agreement was brought about by coercion or duress to which appellant was subjected. One who invokes provisions of a statute for his own benefit may be denied the right to question its constitutionality. Daniels v. Tearney, 102 U. S. 415, 421, 26 L. Ed. 187; Ross v. Lipscomb, 83 S. C. 136, 65 S. E. 451, 137 Am. St. Rep. 794; Yarnell v. Hillsborough Packing Co. (C. C. A.) 70 F.(2d) 435, 438; 6 R. C. L. 95.

 A mandatory injunction is not grantable as a matter of right, but is granted or refused in the exercise of a sound judicial discretion. Morrison v. Work, 266 U. S. 481, 45 S. Ct. 149, 69 L. Ed. 394. The exercise of that discretion properly may be influenced by a doubt as to the validity of a statute under color of which the party resisting the application for the writ was acting in doing what was sought to be forbidden; by the absence from the suit of any party defendant having a beneficial interest in resisting the claim asserted, with the probable result of the court being deprived of the benefit of an adequate presentation of reasonably controversial objections to the granting of the relief sought; or by the circumstance that the issue of the writ against the sole defendant, the appellee—which it seems would be benefited rather than harmed by the removal of a restriction on the transportation in interstate commerce of cotton produced in 1934—probably would have the effect of encouraging other owners of untagged bales of cotton, who are not bound by the decree, to make similar demands, compliance with which by the appellee, in the absence of the support or justification afforded by a court order, inequitably would expose it to the risk of serious punishment for disobeying a statutory provision the validity of which it is not beneficially interested in championing. Bonaparte v. Camden & A. R. Co., 3 Fed. Cas. 821, 827, No. 1,617.

The instant case is readily distinguished from the case of Louisville & Nashville R. Co. v. Cook Brewing Co., 223 U. S. 70, 32 S. Ct. 189, 56 L. Ed. 355. The appellant, defendant, in that case did not in the trial court raise the question of the adequacy or inadequacy of the legal remedies available to the plaintiff; the plaintiff was engaged in a continuing business, the successful prosecution of which during an indefinite period would be adversely affected by the withholding of the service rendition of which by the defendant was sought to be coerced, and the defendant was vitally interested in preventing the granting of the relief sought; the right asserted by the plaintiff was clear, the Kentucky statute in question being plainly unconstitutional under decisions of the highest court of that state and of the Supreme Court of the United States; and in that case the trial court exercised its discretion in granting an injunction, while in the instant case that discretion was exercised in refusing the mandatory injunction prayed for.

The decree is affirmed.